UNITED STATES of America,
Plaintiff–Appellee,

v.

Lawrence WIMBERLY, Defendant–
Appellant.

No. 95–2632.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1996.

Decided March 28, 1996.

Bennett Kaplan (argued) and Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Daniel G. Martin (argued), Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge,
CUMMINGS and BAUER, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Lawrence Wimberly of being a felon in possession of a gun. See 18 U.S.C. § 922(g)(1). Wimberly argues on appeal that the evidence was insufficient to support his conviction because 1) the jury unreasonably believed the testimony of several police officers, and 2) the district court erred in instructing the jury about constructive possession. We affirm.

## BACKGROUND

On June 21, 1994, a Hoffman Estates police detective contacted the Chicago Police Department's 24th District Station, located in Rogers Park, to request assistance in locating Lawrence Wimberly. The detective spoke with Officer Thomas Karnick of the 24th District's Tactical Unit. He told Karnick that the Hoffman Estates police wanted to speak with Wimberly about a recent burglary, and that a warrant was outstanding for Wimberly's arrest. The detective also provided a general physical description of Wimberly, a description of Wimberly's car (including the license plate number), and a Rogers Park address where Karnick might find Wimberly.

That evening, Karnick and two other officers went to the Rogers Park address. Although they did not observe Wimberly or his car at that time, they did note the name "Wimberly" on a mailbox for an apartment on the building's second floor. The officers decided to conduct surveillance of the building in an effort to apprehend Wimberly, and called for additional officers to assist them. Three officers responded, and all six officers met at a nearby high school to discuss the surveillance.

Shortly before 9:00 p.m., the officers returned to the Rogers Park apartment building. Karnick positioned himself in the building's back yard. From there, Karnick could see the alley next to the building. Soon thereafter, he observed a car matching the description and license number given to him by the Hoffman Estates detective. A man who turned out to be Wimberly got out of the car, then reached back into the car and retrieved a handgun, which he placed into the waistband of his pants. Karnick radioed the other officers that Wimberly had arrived and that he had a gun, and then ran into the alley after Wimberly, who fled toward the apartment building. Two other officers joined in the chase, and followed Wimberly and Karnick into the building. As the three officers climbed the stairs, they heard a door slam on the floor above. When they reached the second floor, the door of the "Wimberly" apartment was locked. They knocked loudly, identified themselves as police officers, and stated that they had a warrant for Wimberly's arrest.

During this time, the other three officers ran to the rear of the apartment building. One officer positioned himself on the rear landing outside the second floor apartment, from where he could see through a window into the apartment's kitchen. Not long after Wimberly entered the apartment, the officer saw him enter the kitchen, look around, and then leave the kitchen. Moments later, the officer saw Wimberly return to the kitchen, remove his shirt, pull a handgun from his waistband, and wrap the handgun in the shirt. Another officer then arrived on the rear landing and observed Wimberly with his bundled shirt. Both officers saw Wimberly place the bundled shirt in a drawer near the sink.

When the officers at the front of the apartment learned that Wimberly no longer was armed, they kicked open the door, entered the apartment, and arrested Wimberly. The officers also recovered the bundled shirt and handgun from the kitchen drawer.

The defense theory at trial was that the police fabricated a "hot pursuit" scenario to justify their otherwise unlawful entry into the apartment. The defense asserted that the officers' testimony was incredible, that the officers never saw Wimberly in the alley behind the apartment, that they never saw him possessing a gun in that alley, that the chase never occurred, and that the officers never saw him possessing a gun through the kitchen window. In support of this theory, the defense called an alibi witness, Patty Daniel. Daniel testified that Lorraine Wimberly, the defendant's sister and Daniel's friend, lived in the apartment where the de-

fendant was arrested. Daniel further testified that on the evening of June 21, 1994, Lorraine was at Daniel's apartment when Daniel received a telephone call from the defendant. The defendant asked to speak to Lorraine and told Daniel that the police were knocking on the door. After Lorraine spoke with the defendant, Daniel had a second conversation with him, during which she used a three-way call feature to telephone the defendant's mother, Gloria Wimberly. After twice reaching a busy signal, Daniel reached Gloria and relayed what had occurred. She then ended the conversation with the defendant.

The defendant submitted into evidence telephone records that showed a thirteen minute call placed from the "Wimberly" apartment to Daniel's home at 8:51 p.m. on June 21, 1994, but did not indicate who made the call. In rebuttal, the prosecutor called a telephone company representative to identify and testify about records of the activity of Daniel's telephone the evening of June 21, 1994. Although the records showed all out-going calls from Daniel's telephone that evening, they did not indicate that any call was made from Daniel's telephone to Gloria Wimberly's home between 8:51 p.m. and 9:04 p.m.

## ANALYSIS

### I. *Insufficiency of the Evidence*

■■■ Wimberly raises an insufficiency of the evidence challenge to his conviction, asserting that the police officers' testimony "was so outrageous that it was incredible as a matter of law." He bears a heavy burden in this endeavor, particularly because he bases his challenge on credibility determinations. *United States v. Saunders*, 973 F.2d 1354, 1359 (7th Cir.1992), cert. denied, 506 U.S. 1070, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993).

■■■ To obtain a conviction under § 922(g)(1), the government must prove beyond a reasonable doubt that the defendant knowingly possessed a firearm that had traveled in interstate commerce, and that the defendant had a previous felony conviction. *United States v. Williams*, 33 F.3d 876, 878 (7th Cir.1994), cert. denied, — U.S. —, 115 S.Ct. 1383, 131 L.Ed.2d 236 (1995). The

parties stipulated that Wimberly had a prior felony conviction and that the firearm had traveled in interstate commerce. The only issue before the jury was whether Wimberly knowingly possessed the firearm.

Wimberly points to various alleged contradictions and discrepancies in the officers' testimony to support his contention that it was patently incredible and that the events leading to his arrest (including his possession of the firearm) never occurred. For example, he notes that Karnick testified before the grand jury that the officers made one trip to the apartment building on June 21, 1994, but that at trial he testified that the officers went to the building three times. Wimberly also notes that no officer mentioned the meeting at the nearby high school until trial. In addition, Wimberly notes that Karnick testified at trial that he observed the defendant in the alley with the naked eye, but that he testified before the grand jury that he used binoculars to watch Wimberly.

Wimberly also asserts that the "laws of nature" support his contention that the officers' testimony was incredible as a matter of law. For example, Wimberly states that the chase transcended the "time-space continuum" because the timing testified to by the officers did not account for nearly an hour of time. Wimberly also contends that if Karnick indeed followed him at a distance of 30 to 40 feet, he inevitably would have caught Wimberly in the foyer of the apartment building. Wimberly contends that these discrepancies demonstrate that the officers' account of the events leading to his arrest was "physically impossible." Wimberly also asserts that the telephone records show that he was in the apartment speaking to Patty Daniel during the time that the officers testified the chase occurred, and that the "records alone rendered the officers' account of events physically impossible."

Even if the officers' testimony contained some discrepancies or contradictions, none of the testimony was so "improbable on its face that no reasonable factfinder could accept it." *United States v. Yusufu*, 63 F.3d 505, 508–09 (7th Cir.), cert. denied, — U.S. —, 116 S.Ct. 578, 133 L.Ed.2d 501 (1995). Similarly, we find nothing in the officers' testimony to

support Wimberly's contention that their account of the events leading to his arrest was "physically impossible." For example, we cannot see how nearly an hour of unaccounted time defied any laws of nature. Nor does Karnick's failure to catch up to Wimberly between the alley and the apartment building show that his testimony was patently unbelievable. Perhaps Karnick chose not to apprehend an armed suspect without backup support from the other officers. Perhaps Karnick does not run as quickly as Wimberly. Any number of credible explanations exist. Furthermore, the telephone records do not show that Lawrence Wimberly used the telephone during that time. They merely show that someone in the apartment used the telephone. The government's theory at trial was that Wimberly's sister made the call to Daniel, and that she left the apartment just before Wimberly and the police arrived. The jury reasonably could have accepted that theory.

■ We need not address all of the various matters Wimberly cites to support his contention that the jury unreasonably relied on the "unbelievable" testimony of the police officers. Where a sufficiency of the evidence challenge is based on witness credibility, we defer to the jury's determination absent "extraordinary circumstances." *United States v. Donovan,* 24 F.3d 908, 913 (7th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994). No "extraordinary circumstances" exist here. None of the officers' testimony was so "outrageous" that it was "incredible as a matter of law." See *United States v. Scarbrough,* 990 F.2d 296, 299 (7th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 121, 126 L.Ed.2d 85 (1993). Wimberly presented these same credibility arguments to the jury; the jury chose to credit the officers' testimony and convict him. That is that.

II. *Constructive Possession Instruction*

■ Over defense objection, the district court instructed the jury that they could find possession if they found beyond a reasonable doubt that Wimberly had actual or constructive possession of the gun. Wimberly argues that the district court erred in instructing the

jury about constructive possession because the instruction "effectively invited the jury to disregard the testimony of Chicago police officers and still find [him] guilty," and because no evidence supported an inference of constructive possession. In reviewing jury instructions to which objections properly were raised at trial, we must determine from looking at the charge as a whole "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *United States v. Donovan,* 24 F.3d at 916–17 (citation omitted). If the instructions fairly and accurately summarize the law, and have support in the record, we will not disturb them on appeal. *Id.* at 917.

Wimberly concedes that the contested instruction may have accurately stated the law, but asserts that the record did not support giving the instruction. We disagree. Although Wimberly's actual possession of the gun in the alley was part of the government's case, the evidence also included testimony that Wimberly stashed the gun in a kitchen drawer before the officers entered the apartment. That evidence supported the district court's decision to instruct the jury on alternative theories of possession. See *United States v. Moore,* 936 F.2d 1508, 1525 (7th Cir.), cert. denied, 502 U.S. 991, 112 S.Ct. 607, 116 L.Ed.2d 630 (1991) (finding requisite possession for purposes of § 922(g)(1) through constructive possession of firearm).

## CONCLUSION

For the foregoing reasons, we affirm Wimberly's conviction.

AFFIRMED.