UNITED STATES of America,
Plaintiff–Appellee,

v.

Gregory Charles JONES and Anthony
Tyrone Bailey, Defendants–
Appellants.

Nos. 98–2229, 98–2232.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1999.

Decided Aug. 11, 1999.

James M. Warden (argued), Office of the U.S. Atty., Indianapolis, IN, for United States.

Kevin McShane (argued), Indianapolis, IN, for Jones.

James C. McKinley (argued), Indiana Federal Community Defenders, Inc., Indianapolis, In, for Bailey.

Before BAUER, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Gregory Jones and Anthony Bailey appeal their convictions by a jury for two counts of car jacking in violation of 18 U.S.C. §§ 2119(a) and (b), one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) and three counts of using or carrying a firearm during and in relation to a crime of violence in violation of § 924(c). For the reasons stated herein, we affirm the defendants' convictions.

## I. BACKGROUND

On September 3, 1997, Jerry Jones,[1] Gregory Jones and Anthony Bailey held up a UPS truck at gun point and, after taking the driver's uniform, handcuffed the driver in the back of the truck. Gregory Jones and Bailey drove the UPS truck to the National City Bank in Chesterfield, Indiana. Jerry Jones followed them in a 1991 red Oldsmobile Toronado, registered to Gregory Jones. The three entered the bank at 11:35 a.m. Gregory Jones, wearing the UPS driver's uniform, pretended to make a UPS delivery. The men then robbed the bank, stealing over $105,000 in cash.

The three men left the bank together and traveled in the Oldsmobile southbound toward Indianapolis on I–69. Based on information supplied by witnesses in the bank, state police soon tracked down the getaway car and chased it along I–69 until the defendants veered across the median and crashed into a ditch next to a cornfield. From there, the defendants fled on foot across the cornfield toward a farmhouse owned and occupied by the Routte family. The three then slipped into the house undetected and hid in upstairs closets.

At approximately 5:45 p.m., the Routte's daughter, Crystal, entered her bedroom and noticed that her closet door was ajar. When she opened the door, she saw Anthony Bailey inside her closet pointing a gun at her. She screamed and her parents came running toward her room, but were immediately confronted by Gregory and Jerry Jones. The defendants corralled the family together and eventually ordered Mr. Routte to drive them to Indianapolis in his pickup truck. Before leaving, they tied up Crystal and Mrs. Routte with shoe strings and told Mrs. Routte that they would kill her husband if she called the police. Mr. Routte delivered the three men to Indianapolis where, based on photo identifications they left behind in the Oldsmobile, they were eventually apprehended. Bailey's fingerprints were found on the telephone in Crystal Routte's bedroom.

Following a six count grand jury indictment for bank robbery, car jacking of both the U.P.S. truck and Mr. Routte's vehicle, and use of a firearm, the defendants were convicted on all counts by a jury and given sentences ranging from 56 to 70 years imprisonment.

---

1. On February 3, 1999, this court granted Jerry Jones' motion to dismiss his appeal pursuant to Federal Rule of Appellate Procedure 42(b).

## II. DISCUSSION

### A. Car Jacking.

The defendants were each charged with two counts of car jacking in connection with the UPS van and Mr. Routte's truck. Their first argument is that the district court erred in its instruction to the jury concerning one of the elements of the offense of car jacking. When objections are raised at trial to jury instructions, this court reviews the charge as a whole to determine whether the jury was misled, whether it had an understanding of the issues, and whether it recognized its duty to determine those issues. *United States v. Wimberly*, 79 F.3d 673, 676 (7th Cir.1996) (citing *United States v. Donovan*, 24 F.3d 908, 916–17 (7th Cir. 1994)). If the instructions provide a fair and accurate summary of the law, and are supported by the record, we will not disturb them on appeal. *Id.* The district court's use of a particular instruction will be reviewed in the light most favorable to the government. *United States v. Stillo*, 57 F.3d 553, 559 (7th Cir.1995).

A person commits the offense of car jacking if he or she "with the intent to cause death or serious bodily harm takes a motor vehicle (in interstate commerce) from the person or presence of another by force and violence or by intimidation (or attempts to do so)." 18 U.S.C. § 2119. The defendants argue that the district court erred in instructing the jury that the "intent to cause death or serious bodily harm" portion of the offense could be satisfied if the jury found evidence "that the defendant intended to cause death or serious bodily harm if the victim resisted the defendant's efforts to obtain the victim's motor vehicle." According to the defendants, this type of "conditional intent" is insufficient because it renders the intent requirement virtually indistinguishable from the "by force and violence or by intimidation" element of the offense. Rather, the defendants claim that the district court should have instructed the jury that they could be convicted only if they

had an unconditional intent to kill or injure their victims from the start.

Additionally, the defendants maintain that even under the conditional intent standard there is insufficient evidence to support the jury verdict because the defendants made only empty threats to their victims. While the defendants' claim that these threats may have satisfied the "by force and violence or by intimidation" element, they did not satisfy the intent element because there was no additional evidence that, had their victims not complied, the defendants would have killed or injured them. On a sufficiency challenge, we review the evidence in the light most favorable to the government, and will reverse a conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Miller*, 159 F.3d 1106, 1109 (7th Cir.1998) (citing *United States v. Hill*, 40 F.3d 164, 166 (7th Cir. 1994)). Thus, a defendant has a heavy burden in challenging a conviction based on the sufficiency of the evidence. *Id.* (citing *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir.1996)).

The defendants rely on the Ninth Circuit's decision in *United States v. Randolph*, 93 F.3d 656 (9th Cir.1996), which held that conditional intent was insufficient to satisfy the intent element of 18 U.S.C. § 2119. Not only is the Ninth Circuit's ruling contrary to all other circuits to have addressed this issue, *see United States v. Lake*, 150 F.3d 269 (3d Cir.1998); *United States v. Williams*, 136 F.3d 547 (8th Cir. 1998); *United States v. Romero*, 122 F.3d 1334 (10th Cir.1997); but in fact the Supreme Court's recent decision in *Holloway v. United States*, —— U.S. ——, —— ——, 119 S.Ct. 966, 970–71, 143 L.Ed.2d 1 (1999), settles the instruction issue in favor of conditional intent. In *Holloway*, the Court held that conditional intent satisfies the intent requirement in the car jacking statute, though it emphasized that "the intent element requires the [g]overnment

to prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." *Id.,* — U.S. —, 119 S.Ct. at 972. Thus, the requirement will not always be met just by showing that the element of intimidation was present.

As for the car jacking of the UPS truck, we conclude the evidence was sufficient to support a finding of conditional intent to do the driver harm had he not complied with the defendants' demands. One of the defendants pointed the gun at the driver and instructed him to do as they ordered "or I'll shoot you." This, coupled with telling the driver to get down "or else," is strong evidence of conditional intent. It is true that these same facts also support a finding of intimidation, but this does not render the intent element superfluous. *Id.* For example, had the defendants made the same threats, but carried an unloaded gun, the intimidation element would be satisfied but the intent element might not.[2] Thus, we conclude that there was sufficient evidence of the defendants' conditional intent to harm the UPS driver.

The second count, the car jacking of Mr. Routte, while a bit closer, is ultimately supported by the evidence. It is true that there is no direct evidence that had Mr. Routte refused to drive the defendants to Indianapolis, they would have killed or injured him. However, the three fugitives were armed, had admittedly just robbed a bank, and had narrowly avoided capture after a police chase. Moreover, they had brandished a gun at Mr. Routte's wife and seventeen year old daughter. Thus, the defendants' claim that Mr. Routte "volunteered" to take them into Indianapolis clearly misrepresents the situation. But, the strongest piece of evidence supporting conditional intent is the statement the defendants made to Mrs.

Routte that they would kill Mr. Routte if she called the police. This statement alone is sufficiently tied to the car jacking and could be the basis for a jury finding of conditional intent.

Therefore, we conclude that the intent instruction was proper and the evidence was sufficient to support both car jacking convictions.

## B. Voir Dire.

The defendants, both of whom are African-American, next argue that the district court's voir dire did not adequately allow them to ferret out racially prejudiced jurors. Federal Rule of Criminal Procedure 24(a) gives a district court the authority to conduct voir dire. In reviewing the voir dire process to determine if it was sufficient to detect or overcome racial bias on the venire, this court asks "whether the procedure used for testing impartiality created a reasonable assurance that prejudice would be discovered if present." *United States v. Guy,* 924 F.2d 702, 707 (7th Cir.1991) (citing *United States v. Dellinger,* 472 F.2d 340, 367 (7th Cir.1972)). We review the district court's selection of questions to be posed at voir dire for an abuse of discretion. *United States v. $94,-000.00 in U.S. Currency,* 2 F.3d 778, 788 (7th Cir.1993).

Though Judge McKinney tried the case, Chief Judge Barker conducted the questioning of the potential jurors. She began with an explanation of the process and its purpose, and told the potential jurors that she would be asking them questions intended to determine if they could be fair and impartial. Judge Barker also told the prospective jurors that if they felt embarrassed or uncomfortable about an answer they wished to give, they would be permitted to come to the bench and answer only in front of the court and counsel. Having so instructed the jury pool, Judge Barker

**2.** We are assuming that the gun brandished by the defendants was loaded because the record is devoid of any indication to the contrary and defendants' counsel did not make any representation at oral argument that the gun was unloaded.

proceeded to her examination. During this examination, she asked three direct questions about race: (1) Would the defendants' race play any role in their decision?; (2) Would race prevent any of the jurors from presuming the defendants innocent?; and (3) Would race prevent any jurors from affording the defendants their full constitutional rights? At the end of her examination, four out of a pool of forty-three jurors were excused for race-related reasons.

The defendants argue on appeal that Judge Barker should have asked more indirect race-related questions to evoke hidden or subconscious racial animus. They claim that because the court's direct questions would elicit few honest responses about racial attitudes, the defendants had no basis for striking potentially prejudiced jurors. The defendants proposed specific indirect questions which the court declined to ask.

We conclude that the district court did not abuse its discretion in choosing to conduct voir dire as it did. We acknowledge the persuasiveness of the defendants' assertion that if asked directly, few will respond that they have racial prejudice. We also recognize that indirect questions—such as questions about the potential jurors' relationships with African–Americans or attitudes toward racial epithets—might have provided further insights and a firmer basis for the defendants to strike potential jurors. However, in the context of this case, we are satisfied that the judge's examination was well within her discretion. Judge Barker's voir dire consisted of more than just rudimentary "stock" questions that have been held to be insufficient to insure the impartiality of the jury. *See Art Press, Ltd. v. Western Printing Machinery Co.*, 791 F.2d 616, 619 (7th Cir. 1986). Instead, the judge's questions about race, combined with her comments at the start of the voir dire, were intended to produce—and in fact succeeded in providing—"some basis for a reasonably knowledgeable exercise of the right to challenge." *United States v. Hasting*, 739 F.2d 1269, 1273 (7th Cir.1984). It is noteworthy that during the voir dire process, four jurors informed the judge that the defendants' race would prevent them from being impartial. We conclude, therefore, that the manner in which the judge conducted voir dire did not constitute an abuse of discretion.

## C. Prosecutor's Statements.

The defendants also argue that two statements made by the prosecutor during the trial were prejudicial and deprived them of a fair trial, and that the district court erred in refusing to grant them a mistrial based on those statements. The defendants' first object to the prosecutor's repeated reference during the opening statement to the defendants' interaction with the UPS driver as an "assault." They claim this was improper, because none of the defendants were ever charged with assault and no facts on the record supported this offense. Second, the prosecutor stated during closing argument that, while the defendants did not bear the burden of proof, they had the ability and subpoena power to call any experts they wanted, but chose not to do so. The defendants argue that this improperly implied that they bore the burden of presenting evidence and that their failure to do so raised an inference of guilt.

We review a district court's denial of a motion for mistrial on the grounds of prosecutorial misconduct due to alleged improper statements for an abuse of discretion. *United States v. Cotnam*, 88 F.3d 487, 498 (7th Cir.1996). In examining prosecutorial misconduct, we make two inquiries: whether the conduct was improper and, if so, whether it prejudiced the defendants by depriving them of a fair trial. *United States v. Morgan*, 113 F.3d 85, 89 (7th Cir.1997). In response to the first claim, the government argues that the statement about the "assault" of the driver was not improper because it adequately described the undisputed facts and, in any

event, any objection to it was waived because it was not raised in the defendants' motion for a new trial. Given the record evidence, we agree that it was not improper for the government to describe the defendants' approach to the UPS driver as an assault. An act putting another in reasonable apprehension of bodily harm is an assault, see *United States v. Bell*, 505 F.2d 539, 540 (7th Cir.1974), and surely threatening a person at gun point and tying him up constitutes an assault under this definition.

■ As for the statement made during its closing argument, the government asserts that it was invited by the defendants who, during their closing argument, claimed that an expert witness could have disproved the government's witness concerning certain fingerprint evidence. In responding to that claim, the prosecutor stated:

> Ladies and gentlemen, defendants in criminal cases have absolutely no obligation to present any evidence to you, but they have subpoena power, the same as the [g]overnment has, and they can bring in expert witnesses if they want, if they think it would help their case.

Given the context in which it was made, the prosecutor's comment was not improper, for as we recently noted in a case involving almost identical statements:

> In a case like this where the defendant himself has broached the subject of missing witnesses by asking the jury to in a sense penalize the government for its failure to produce the [witnesses], the prosecutor's argument in response clearly was proper ... [T]he prosecutor's observation that the defense could produce a certain witness or witnesses if it wished neither alters the burden of proof nor penalizes the existence of a constitutional right. Rather, the argument merely conveys information that "[t]he jury is entitled to know."

*United States v. King*, 150 F.3d 644, 649 (7th Cir.1998) (citing *United States v. Sblendorio*, 830 F.2d 1382, 1393 (7th Cir.

1987)). Thus, the statement about the defendants' ability to call expert witnesses was clearly permissible in light of the defendants' speculation about what an expert—had they called one—could have done for their case. Because we conclude that the statement was not improper, we need not address whether it prejudiced the defendants by depriving them of a fair trial. The district court did not err in refusing to grant the defendants' motion for a mistrial based on the prosecutor's statement.

## D. Fingerprint Evidence for Defendant Bailey.

■ The final issue relates only to defendant Bailey. He claims that the government withheld until the last minute a key piece of fingerprint evidence found on a telephone in the Routte home and that the district court erred in denying his motions to exclude this evidence prior to trial and for a new trial based on that evidence. Rulings on discovery matters are within the sound discretion of the district court, and the exercise of that discretion will be reversed only upon a showing of prejudice to the substantial rights of the defendant. *United States v. Salerno*, 108 F.3d 730, 742 (7th Cir.1997); *United States v. Caudill*, 915 F.2d 294, 299 (7th Cir.1990).

The fingerprint at issue was photographed by a police technician, who then wiped the print off the phone, thus destroying it. Bailey claims that despite his request for all of the government's evidence, no original photograph of the print was provided until the day before trial. Instead he was given a copy of that photo. Because he was not provided with an original photograph, Bailey asserts that he could not determine whether the print was planted and, therefore, he was prevented from preparing an adequate defense and deprived of a fair trial.

The government responds that the defendant knew about the fingerprint evidence for a long time, that it provided

Bailey with a photocopy of the original print photograph, and that it gave him the original photo in plenty of time for a defense expert to examine it before trial. It also maintains that the fact that Bailey never called a fingerprint expert is not the fault of the government. Additionally, the government asserts that, although Bailey moved to have the fingerprint evidence excluded, he did not seek a continuance in order provide extra time for his expert to examine the original fingerprint photograph. Finally, the government claims that the wiping off of the print does not amount to destruction of evidence and that this was done in compliance with state procedure because the fingerprint identification technique involves the use of dangerous chemicals.

We conclude that the fingerprint was not erroneously admitted into evidence. Bailey was notified of the existence of the print on the day his counsel was appointed and he was given a copy of the examination report prepared by the government's expert. Also, the record reflects that the fingerprint expert selected by Bailey had ample opportunity to review the fingerprint evidence, that this expert was paid for his services, and that the defendant chose not to call his expert. Finally, contrary to Bailey's assertion, the fingerprint evidence was not crucial to the prosecution's case given the weight of the evidence against him. As this court has previously indicated, the totality of the evidence provides confidence in the outcome of the trial. *United States v. Silva*, 71 F.3d 667, 670 (7th Cir.1995).

### III.   CONCLUSION

For all the foregoing reasons, we AFFIRM the judgments of conviction.