UNITED STATES of America, Plaintiff–Appellee,

v.

CARLOS OFARRIT–FIGUREOA, Defendant–Appellant.

No. 01–1183.

United States Court of Appeals, Seventh Circuit.

Submitted July 23, 2001.

Decided July 23, 2001.

Before Hon. BAUER, Hon. COFFEY, Hon. WILLIAMS, Circuit Judges.

## ORDER

After a jury trial, the district court convicted Carlos Ofarrit–Figureoa of abusive sexual contact, 18 U.S.C. § 2244(a)(1), and forcible assault causing bodily injury to a federal officer, 18 U.S.C. § 111(a)-(b). Ofarrit–Figureoa filed an appeal, but after reviewing the record his appointed counsel moves to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), on the ground that the appeal is wholly frivolous. Ofarrit–Figureoa has not responded to counsel's motion, though counsel identifies in his *Anders* brief a few issues raised at the request of his client. Counsel's brief is facially adequate, so we limit our review of the record to the issues counsel discusses. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir.1997) (per curiam).

At all times relevant to this case, Ofarrit–Figureoa, who was born in Cuba, was a deportable alien held at the United States Penitentiary (USP) in Terre Haute, Indiana. Ofarrit–Figureoa worked in the prison kitchen, often at the same time as a non-inmate staff member named Gloria Hale. Hale noticed that Ofarrit–Figureoa was a hard worker and soon after she became a supervisor in October 1999, Hale had Ofarrit–Figureoa assigned to her shift.

Subsequently Hale began suspecting that Ofarrit–Figureoa had an abnormal interest in her; Hale claims Ofarrit–Figureoa always tried to be close to her and

would brush up against her. Finally, after a March 1, 2000 incident when Ofarrit–Figureoa became mad because Hale had another inmate help her move a box, Hale had Ofarrit assigned to a different supervisor.

At approximately 5:30 a.m. on March 22, 2000, Hale was working in a tool room that measured about four-by-four feet. Ofarrit–Figureoa came by and asked for some cleaning supplies. Hale told him she would get him the supplies, and Ofarrit–Figureoa left. He returned ten minutes later, at which point Hale told Ofarrit–Figureoa to get away from her or she would have him locked up. Ofarrit–Figureoa complied, but returned soon thereafter and slammed the door behind him, locking Hale and himself in the tool room. When Hale reached for her radio to call for help, Ofarrit–Figureoa knocked it out of her hand. Hale screamed, and then Ofarrit–Figureoa put his hand over her mouth and pinned her against a wall. Ofarrit–Figureoa then kissed Hale on the mouth, bit her lip and cheek hard enough to draw blood, and rubbed her "crotch area." Ofarrit–Figureoa finally backed off when Hale wet her pants. Hale convinced Ofarrit–Figureoa to let her go, and after she got away she radioed for help. Ofarrit–Figureoa was apprehended by prison staff soon thereafter.

At trial, Hale testified to the above facts and to the effect that the attack had on her. She also asserted that she never had anything more than a professional relationship with Ofarrit–Figureoa. Four prison staff members testified as to Hale's radio call for help, her demeanor after the incident, and their apprehension of Ofarrit–Figureoa. Finally, the parties stipulated that a prison physician would testify that he examined Hale after the attack and found blood on her shirt and abrasions on

her right and left cheeks, lower lip, and left elbow.

In his defense, Ofarrit–Figureoa testified he and Hale had a "sexual friendship." Ofarrit–Figureoa claimed that Hale flirted with him and that they had at least three or four sexual encounters. Ofarrit–Figureoa also testified that he got upset with Hale after he caught her "having sexual contact" with another inmate. As for the incident on March 22, Ofarrit–Figureoa admitted that he had an argument with Hale and that in his anger he grabbed Hale and bit her on the lip and cheek. He denied, however, any sexual contact with Hale on that date.

After 50 minutes of deliberation, the jury found Ofarrit–Figureoa guilty of both abusive sexual contact and forcibly assaulting a federal officer. Ofarrit–Figureoa's prior convictions for aggravated robbery, first degree robbery, and aggravated sexual assault qualified him as a career offender. See U.S.S.G. § 4B1.1. Therefore, Ofarrit–Figureoa received a total offense level of 24 and a criminal history category of VI. See id. The court imposed concurrent 120–month sentences on both counts.

■ In his Anders brief, counsel first evaluated a number of rulings the district court made on hearsay objections. These evidentiary hearings would be reviewed for an abuse of discretion; however, even if error were found this court would not reverse if the error were harmless. See United States v. Wesela, 223 F.3d 656, 663–64 (7th Cir.2000); United States v. Johnson, 127 F.3d 625, 630–31 (7th Cir. 1997).

■ Counsel notes that the district court overruled three of Ofarrit–Figureoa's hearsay objections. First, Hale was allowed to testify that just after the assault she did not demonstrate to a physician's assistant the manner in which Ofar-

rit–Figureoa touched her. Second, prison lieutenant Mark Traxler, who responded to Hale's radio call after the assault, was permitted to testify that Hale's call "was one of those urgent calls that I need you back here, or I need to see you." Finally, Traxler was allowed to testify to the details of the attack Hale provided him just after the incident.

Counsel is correct that arguments regarding the admission of this testimony would be frivolous. Hale's testimony is not hearsay because it does not involve an out-of-court statement, but rather a claim that she did not demonstrate an action to someone. Traxler's testimony regarding Hale's radio call was admissible because it was offered not to prove that Hale made a call for help (a fact that is not disputed) but rather to show that Traxler received and acted upon information. *See United States v. Sanchez*, 32 F.3d 1002, 1005 (7th Cir.1994). Traxler's other testimony was properly admitted as an excited utterance, namely a statement relating to a startling event made under the stress caused by that event. *See* Fed.R.Evid. 803(2); *Wesela*, 223 F.3d at 663.

■ Counsel also assessed challenging the district court's refusal to allow Ofarrit–Figureoa to testify as to what various prison officials said to him as they were apprehending him after the assault. Ofarrit–Figureoa was allowed to testify that those officials had banged his head against cell bars a number of times, but the district court sustained the government's objections when Ofarrit–Figureoa was asked what the guards were saying at the time in question. Counsel suggests that this ruling may have been erroneous because the government opened the door to the topic by questioning the prison officials about Ofarrit–Figureoa's apprehension. Any argument on this point would be frivolous, however, because the testimony is not relevant to Ofarrit–Figureoa's guilt or innocence. *See* Federal Rule of Evidence 402.

Counsel also correctly concludes that any argument regarding the district court's rulings on Ofarrit–Figureoa's motion in limine would be frivolous because the district court made no rulings unfavorable to Ofarrit–Figureoa on that motion. In the motion, Ofarrit–Figureoa sought to admit evidence of prior sexual contact he had with Hale, exclude evidence of his 1983 conviction for aggravated robbery, and admit only the fact of his 1984 conviction for first degree robbery and aggravated sexual assault. The district court found it unnecessary to rule on the admissibility of evidence of prior sexual contact with Hale because none of Ofarrit–Figureoa's proposed evidence fell under Federal Rule of Evidence 412. Furthermore, the district court agreed with Ofarrit–Figureoa that his 1983 conviction should be excluded and that only the fact of his 1984 conviction was admissible.

■ Counsel noted that his client requested that he argue that photographs of Hale's bruises taken the day after the incident should not have been admitted because the photographs were taken by Hale's husband rather than a law enforcement agent. As counsel points out, this argument would be frivolous because there is no requirement that photographic evidence be produced by law enforcement officials.

■ Next, counsel suggested that the district court erred in taking judicial notice that USP is located in the Southern District of Indiana (a fact that was necessary to establish venue) without, as required under Federal Rule of Evidence 201(g), instructing the jury that it "may, but is not required to, accept as conclusive any fact judicially noticed." As counsel concluded, however, raising such argument on appeal

would be frivolous because the error was harmless. The government established venue by providing sufficient evidence that USP is located in Terre Haute, Indiana, a city that lies in the Southern District of Indiana. *See United States v. Hatchett,* 31 F.3d 1411, 1424 (7th Cir.1994).

■ We agree that the next issue identified by counsel—whether Ofarrit–Figureoa's rights were violated when he was not present at a sidebar regarding a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29— would likewise be frivolous. Under Federal Rule of Criminal Procedure 43(a) a defendant has the right to be present at every stage of his trial. The record demonstrates, however, that after the court reminded Ofarrit–Figureoa's counsel of Rule 43, counsel obtained Ofarrit–Figureoa's consent to argue the Rule 29 motion outside of his presence. Furthermore, we would not find a violation of Ofarrit–Figureoa's rights because he could not have gained anything by being present at the sidebar. *See United States v. Smith,* 230 F.3d 300, 310 (7th Cir.2000); *United States v. McCoy,* 8 F.3d 495, 496–97 (7th Cir. 1993).

■ Counsel also assessed challenges to three of district court's rulings on the jury instructions. First, the district court gave two instructions over Ofarrit–Figureoa's objections. We would find error only if those instructions were inaccurate summaries of the law, unsupported by the record, or misled the jury. *See United States v.. Lanzotti,* 205 F.3d 951, 956 (7th Cir.2000); *United States v. Wimberly,* 79 F.3d 673, 676 (7th Cir.1996).

■ The first instruction given over objection was a definition of "bodily injury," a necessary element for finding guilt under 18 U.S.C. § 111(a)-(b). Ofarrit–Figureoa argued that no definition should be

given because the phrase is not defined in the act. The district court instructed the jury that a "bodily injury" is "any injury which is 'painful and obvious,' even if the victim does not seek medical attention … including a cut, abrasion, bruise, burn, or disfigurement, physical pain, illness, impairment of a function of a bodily member, organ, or mental faculty, or any other injury to the body no matter how temporary." A challenge to this instruction would be frivolous because the instruction accurately reflects the definition of bodily injury in other federal statutes, *see, e.g.,* 18 U.S.C. § 831(f)(5); *United States v. Myers,* 972 F.2d 1566, 1572–73 (11th Cir.1992), and the sentencing guidelines, *see* U.S.S.G. § 1B1.1 comment. (n.1(b)); *United States v. Hamm,* 13 F.3d 1126, 1127–28 (7th Cir. 1994).

■ The second instruction given over Ofarrit–Figureoa's objection pertained to the abusive sexual contact charge and allowed the jury to convict if they found that Ofarrit–Figureoa "knowingly engaged in or caused sexual contact with Gloria Hale." Ofarrit–Figureoa argued that the instruction should have read "knowingly caused another person to engage in sexual contact." The language used, however, more accurately reflects the law because it comes directly from 18 U.S.C. § 2244(a) and this court's pattern jury instructions, Fed.Crim. Jury Instr. 7th Cir. § 2244(a), and therefore any challenge to the instruction would be frivolous.

■ With regard to jury instructions, counsel also noted that the district court refused to give Ofarrit–Figureoa's proposed instruction that a reasonable but mistaken belief that Hale consented to sexual contact would negate the criminal intent necessary for the abusive sexual contact charge. We would reverse the district court's refusal to give such a theory of defense instruction only if the instruction

is a correct statement of the law, the theory is supported by the evidence, the theory is not already part of the instruction, and the defendant was denied a fair trial by the failure to include the instruction. *See United States v. Payne*, 226 F.3d 792, 794 (7th Cir.2000). Ofarrit–Figureoa's reasonable mistake instruction is not a correct statement of the law because abusive sexual contact requires a use of force that would render the lack of consent obvious. *See United States v. Boyles*, 57 F.3d 535, 542–43 (7th Cir.1995); *United States v. Norquay*, 987 F.2d 475, 478 (8th Cir.1993). Furthermore, Ofarrit–Figureoa's theory is not supported by the evidence because he testified that he did not have sexual contact with Hale, not that he made a mistake about consent. Therefore, any argument regarding this jury instruction would be frivolous.

■ Next, counsel assessed whether the jury's verdict could be challenged as against the manifest weight of the evidence. As counsel noted, however, such argument would consist of little more than asserting that the jury erred in crediting Hale's story over Ofarrit–Figureoa's. This court would not reweigh the jury's credibility determination on appeal. *See United States v. Williams*, 216 F.3d 611, 614 (7th Cir.2000); *United States v. Robinson*, 177 F.3d 643, 647 (7th Cir.1999).

Counsel also considered possible challenges to Ofarrit–Figureoa's sentencing. The PSR, which was adopted by the district court, recommended a base offense level of 10 under U.S.S.G. § 2A3.4(a)(3) for the abusive sexual contact conviction, and a base offense level of 15 under U.S.S.G. § 2A2.2(a) for the forcible assault conviction. Counsel notes that Ofarrit–Figureoa could argue that the forcible assault was not aggravated because it did not involve a dangerous weapon or serious bodily injury, *see* § 2A2.2 comment. (n.1), and that there-

fore he should have been sentenced for a minor assault under § 2A2.3 (which provides a base offense level of 6). Such argument would be frivolous, however, because Offarit–Figureoa had two prior convictions for crimes of violence and therefore the district court was required to treat Ofarrit–Figureoa as a career offender and impose a base offense level of 24 regardless of the offense level for the underlying convictions. *See* U.S.S.G. § 4B1.1. Ofarrit–Figureoa's concurrent 120–month sentences were within the applicable guideline range and the statutory maximums, and therefore they were appropriate.

■ Finally, Ofarrit–Figureoa asked his counsel to assert that trial counsel was ineffective. Such claim, however, would rely on facts outside the record and therefore is more properly presented in a motion under 28 U.S.C. § 2255. *See United States v. Hamzat*, 217 F.3d 494, 501 (7th Cir.2000).

For the foregoing reasons, we GRANT counsel's motion to withdraw and DISMISS the appeal.