United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 8, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-51147

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

TRAVIS JAMES HARRIS,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

Before REAVLEY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

A jury found Defendant-Appellant Travis James Harris guilty of carjacking, in violation of 18 U.S.C. § 2119, and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) and (j). Harris directly appeals his convictions, arguing that the evidence is insufficient to sustain the carjacking conviction and that the district court erred in dismissing a juror and in instructing the jury. We hold that the evidence presented to the jury was insufficient to sustain the carjacking conviction under 18 U.S.C. § 2119. Therefore, we REVERSE Harris's convictions and

VACATE his sentence.

## Factual and Procedural Background

Harris admits by his own testimony to shooting Paul John Ceniceros. The Government and Harris disagree about the circumstances surrounding the shooting. While both agree that Harris committed homicide, the parties dispute whether the Government succeeded at trial in proving a carjacking under 18 U.S.C. § 2119 (2003). The Government argues Harris killed Ceniceros in connection with Harris's taking of Ceniceros's car, a 1996 red Ford Mustang, and that the connection is sufficient to make the crime a carjacking under the statute's language. Harris testified that he killed Ceniceros in self-defense, and Harris characterizes his theft of the automobile as a larcenous afterthought. It is undisputed that the two rode in Ceniceros's car together for some time on the late night or early morning of Ceniceros's death and that the two arrived in the car together at a secluded location where, outside of the car, Harris shot and killed Ceniceros. Harris claims he drove Ceniceros's car away to escape from a deserted area and detection. Harris argues this series of events, even according to the Government's evidence and reasonable inferences therefrom, constitutes only manslaughter and larceny, not a carjacking.

Ceniceros was last seen alive on May 24, 2002, leaving his home in Odessa around 11:45 p.m. As of that time, Ceniceros had

2

told his family he would return shortly, made plans to meet his best friend at a club, and told another friend, Elizabeth Kamali, he would meet her at her house for a barbeque. Later in the evening of May 24 and the early morning hours of May 25, Ceniceros made several phone calls from his mobile phone to friends, the last of which was made at 4:14 a.m. on May 25 to Kamali, who told Ceniceros he could let himself into her house to spend the night and she would leave blankets and food for him. Ceniceros never arrived at Kamali's home.

An oil field worker found Ceniceros's body on July 17, approximately 53 days after Ceniceros disappeared, in an oil field approximately 20 miles outside of Odessa, Texas. When found, Ceniceros's body was partially covered by thick mesquite brush and was partially clothed, although it was determined that he was clothed at the time of his death. Ten shell casings, ejected from a 9-mm automatic handgun, were found approximately 23 to 30 feet from Ceniceros's body, in a pattern which would be consistent with the fact that the shooter had been moving while firing. A gun, which was connected by expert testimony to the bullet slugs recovered from Ceniceros's body, was later found on a road outside Seminole, Texas.

A trace on the gun revealed it had been stolen, about two months before May 24, from its original owner's vehicle in Odessa. No evidence traced the gun from its owner to Harris, but the Government presented evidence related to Harris's possession of a

handgun. One witness testified that he saw Harris handling a black handgun in May 2002 at Harris's home and that he saw Harris with the gun on approximately five occasions within one month. The same witness testified that Harris claimed the firearm was a 9-mm handgun; and at trial, the witness identified the gun that killed Ceniceros as the weapon he saw Harris handling. Witness testimony established that friends of Ceniceros had never seen him with a gun or known him to possess one.

On May 27, 2002, Harris telephoned a friend in Andrews, Texas, to ask her for a ride from Lubbock back to his apartment in Odessa. Harris explained his car had broken down in Lubbock and left him stranded. Friends picked Harris up at the Albertson's in Lubbock that afternoon. He was carrying a black duffle bag at the time. On the way back to Odessa, the group stopped in Seminole, Texas, for food; and at some point on the ride, Harris explained that he had been in Lubbock for two days, sleeping in his red Mustang, while trying to repair the car. Harris was dropped off at his apartment building in Odessa on the evening of May 27.

On June 5, 2002, acting upon their investigation into Ceniceros's disappearance, law enforcement officers effected a search warrant on Harris's white Ford Bronco parked outside his Odessa apartment. There, police discovered a black duffle bag containing clothes, keys later determined to be those for Ceniceros's red Mustang, Ceniceros's mobile telephone, a receipt pad matching that used by Ceniceros in his job as a waiter, a 9-mm

4

cartridge, and latex gloves. Ceniceros's red Mustang was discovered in an Albertson's parking lot in Lubbock on June 14, 2002, without signs of forced entry. The Mustang was disabled due to a defective belt. Inside the car and under the seat, police found Ceniceros's wallet. Under the car, brush, like that found in an oil field, was lodged. Later inspection revealed no physical damage to the interior of the Mustang, and no bullet holes, blood, or semen in or on the car; but expert serology testimony identified DNA evidence found on the top half of the steering wheel of the car as consistent with Harris's own DNA from a blood sample.

During the federal investigation into Ceniceros's disappearance, an FBI agent met with Harris three times. In one interview, Harris claimed he was picked up by a man named Nick, driving a Ford Mustang; the two had car problems after some driving; and finally Nick gave Harris the keys to the car and his cell phone and instructed Harris to drive the car to Lubbock. When shown a photo of Ceniceros, Harris stated the likeness was not Nick's. Harris denied owning a handgun.

On June 16, 2002, a witness led police to a trash dumpster behind an apartment building in Monahans, Texas, located across the street from the home of Harris's father. There, that same day, the witness had found several unfired 9-mm bullets on the ground and placed them in the trash. The police recovered the bullets from the dumpster and identified them as having the same three manufacturers as the shell casings that were found near Ceniceros's

5

body in the oil field.

At trial, Harris testified that on the night of May 24, 2002, his father kicked him out of the car and left him on the side of a highway near Monahans. Harris explained that Ceniceros, who was a single homosexual approximately 28 years old, picked him up along the road about midnight and that together they rode around, talking in a friendly manner, drinking beer into the early morning hours. Harris claimed that at some point, while still dark during the early morning hours, they parked in a secluded area and Ceniceros began asking Harris suggestive questions. Harris testified that he responded by requesting Ceniceros take him back to town and then Harris exited the car and started to walk away. Ceniceros followed, according to Harris, and pointed a handgun at Harris, which Harris identified as the gun admitted into evidence. Harris testified he then, at Ceniceros's demand, got back into the car. Harris claimed Ceniceros demanded Harris let Ceniceros perform oral sex on Harris and later that Ceniceros demanded Harris perform oral sex on Ceniceros. Harris testified that, after Harris repeatedly objected and asked to be taken back into town, Harris acquiesced to Ceniceros's demands for oral sex and then grabbed the gun from Ceniceros. Harris claimed he ran down the road pursued by Ceniceros and that only then did Harris shoot Ceniceros in self-defense. Harris determined Ceniceros was dead, covered the body in sticks, found the car keys, and drove back to his father's house in Monahans before proceeding north towards his mother's home in

6

Missouri. Harris testified that the Mustang broke down in Lubbock, and, at some point on the way there, he tossed the gun out of the car. Harris claimed that he removed bullets from the back of Ceniceros's car, and dumped them later in an alley in Monahans.

The record is void of any evidence, aside from Harris's own testimony at trial, regarding how Harris and Ceniceros got into the Mustang together or arrived at the remote oil field where Ceniceros's body was found. Indeed, the record lacks any evidence relating to the moment Harris demanded or took control of the vehicle.

At the close of the Government's case, Harris's Rule 29 motion for instructed verdict based upon insufficient evidence was denied. Harris renewed his motion at the close of all evidence, and it was again denied. On June 25, 2003, the jury: (1) convicted Harris of carjacking under 18 U.S.C. § 2119; (2) convicted Harris of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) and (j); and (3) found by special verdict that Harris's killing of Ceniceros constituted voluntary manslaughter. Harris now challenges his convictions.

## Discussion

Harris argues that: (1) there was insufficient evidence to satisfy all elements of the carjacking conviction under 18 U.S.C. § 2119; (2) the district court erred in its instructions to the jury regarding the elements of the carjacking statute, 18 U.S.C.

2119; and (3) the district court erred in dismissing juror Jon Clavin.

## I.  Insufficiency of Evidence to Prove Carjacking

At the close of the Government's case in chief, Harris moved for a judgment of acquittal and then reurged that motion at the close of the evidence.  *See* FED. R. CRIM. P. 29(a).  Thus, as to his carjacking conviction, Harris preserved the usual standard of review for challenges to the sufficiency of evidence.  *See United States v. Guerrero*, 169 F.3d 933, 938-39 (5th Cir. 1999).  We review the record to "determine whether a rational trier of fact, after considering all the evidence and reasonable inferences drawn therefrom in a light most favorable to the verdict, could have found the defendant guilty beyond a reasonable doubt."  *United States v. Walker*, 148 F.3d 518, 523 (5th Cir. 1998) (citing *United States v. Carrillo-Morales*, 27 F.3d 1054, 1064 (5th Cir. 1994)); *see also United States v. Cornett*, 195 F.3d 776, 781-82 (5th Cir. 1999) (quoting *Walker*, 148 F.3d at 523); *Guerrero*, 169 F.3d at 939 (quoting *United States v. Pankhurst*, 118 F.3d 345, 352 (5th Cir.), *cert. denied*, 522 U.S. 1030 (1997)).  This review is *de novo*. *United States v. Alarcon*, 261 F.3d 416, 421 (5th Cir. 2001) (citing *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999)).

This Court must affirm if "a rational trier of fact could have found the evidence established the essential elements of the offense beyond a reasonable doubt."  *United States v. Westbrook*,

8

119 F.3d 1176, 1189 (5th Cir. 1997). On the other hand, this panel must reverse the carjacking conviction, "under the *de novo* standard, if 'the evidence is such that a reasonably minded jury must have a reasonable doubt as to the existence of any element of the crime,' or 'the evidence [viewed in the light most favorable to the verdict] gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence.'" *Alarcon*, 261 F.3d at 421 (quoting *United States v. Gonzalez*, 617 F.2d 104, 106 (5th Cir. 1980); *Brown*, 186 F.3d at 664)); *see also United States v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994) (citations omitted). "The only question is whether a rational jury could have found each essential element of the offense beyond a reasonable doubt." *Pennington*, 20 F.3d at 597 (citation omitted).

Harris argues that the evidence is insufficient to sustain the carjacking conviction because the Government presented no evidence that would permit a rational jury, even upon reasonable inferences from the evidence, to find the requisite nexus between the taking of the car and the requisite intent to cause death or serious bodily harm.

Section 2119 provides:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119.

The statute's mens rea element, that is, "with the intent to cause death or serious bodily harm," is at primary issue in this appeal. *See id*.[1]  In *Holloway v. United States*, the Supreme Court addressed whether § 2119's intent element "requires the Government to prove that the defendant had an unconditional intent to kill or harm in all events, or whether it merely requires proof of an intent to kill or harm if necessary to effect a carjacking."  526 U.S. 1, 3 (1999).  Resolving that the latter correctly described Congress's meaning expressed in § 2119, the Court relied upon the placement of the mens rea element within the context of the statute in holding that the text requires a connection in time between the intent to kill or cause serious bodily harm and the demand for or taking of the car.  *Id*. at 7-8.

Section 2119 permits federal prosecution of "a particular kind of robbery," and the intent requirement "modifies" the act of the taking of the car.  *Id*. at 8.  The intent to kill or harm element of the crime "directs the factfinder's attention to the defendant's

_____

[1]For brevity's sake, we refer to "the intent to cause death or serious bodily harm" as simply "intent to kill or harm."  *See Holloway v. United States*, 526 U.S. 1, 3 (1999).

10

state of mind *at the precise moment* he demanded or took control over the car 'by force and violence or by intimidation.' If the defendant has the proscribed state of mind at that moment, the statute's scienter element is satisfied." *Id*. (emphasis added). *Holloway*'s "at the precise moment" language imbues to the language of § 2119 a required element of contemporaneousness between the intent to kill or harm and the taking or demand of the car on the basis of the Court's interpretation of congressional meaning. *Id.*; *United States v. Applewhaite*, 195 F.3d 679, 685 (3rd Cir. 1999).

Arguing that *Holloway* requires the Government to prove a nexus between the intent to kill and the appropriation of the automobile, Harris contends the evidence was insufficient for a rational jury to convict. This Circuit has yet to address the Supreme Court's treatment of the scienter requirement of § 2119 in *Holloway*.[2] As such, Harris supports his argument with the law of our sister Circuits. *See United States v. Adams*, 265 F.3d 420, 424 (6th Cir. 2001); *United States v. Diaz*, 248 F.3d 1065, 1096 (11th Cir. 2001); *Applewhaite*, 195 F.3d 686.

Reversing a carjacking conviction due to insufficient evidence

---

[2]In a case decided before *Holloway*, this Circuit upheld a § 2119 conviction under a sufficiency of evidence challenge where the defendants approached the car with a shotgun and ax handle and pointed the gun at a passenger's head. *United States v. Harris*, 25 F.3d 1275, 1279 (5th Cir. 1994) (stating, without addressing intent, that the "defendants' motive in taking the car is irrelevant").

11

of intent to kill or harm, the Third Circuit addressed the requirement of a nexus between intent and the taking of the car and held that no carjacking is effected under § 2119 "unless the threatened or actual force is employed in furtherance of the taking of the car." *Applewhaite*, 195 F.3d at 686. There, Applewhaite and his co-defendant paramour plotted the murder of the woman's former husband. Luring the victim to his former wife's home, Applewhaite knocked him unconscious, put the victim in the victim's van, and drove away. The victim awoke in the back of the van, driven by Applewhaite, attempted to regain control of the van, and in the struggle was shot by Applewhaite. *Id*. at 682-83. Although clear that sufficient evidence supported an intent to kill or harm, the Third Circuit, relying on *Holloway*, determined that neither the intent, nor the force used to accomplish that intent, "had any nexus to the subsequent taking of [the victim's] van." *Id*. at 685. "Although the defendant[] clearly intended to seriously harm or kill [the victim] neither . . . evil intent, nor the force . . . employed in furtherance of it, had any nexus to the subsequent taking of [the] van." *Id*.

The Eleventh Circuit, distinguishing *Applewhaite*, upheld carjacking convictions where the evidence established that the defendants gained control of cars as part of an extortion plan and where the appropriation was "an important step in the extortion scheme and not a mere afterthought." *Diaz*, 248 F.3d at 1096. *Diaz*

12

restated the intent requirement, in light of *Holloway*, as satisfied when sufficient evidence and reasonable inferences therefrom support a rational jury's conclusion beyond a reasonable doubt that the defendant, "at the moment [he] demanded or took control over the driver's automobile, possessed the intent to seriously harm or kill . . . if necessary to steal the car." *Id*. at 1098 (relying in part on *United States v. Brown*, 200 F.3d 700 (10th Cir. 1999), *cert. denied*, 528 U.S. 1178 (2000)). The Sixth Circuit similarly upheld a carjacking conviction where undisputed evidence demonstrated that the defendant threatened the carjacking victims with a gun. *Adams*, 265 F.3d at 424-25 (finding a physical touching of a victim with a weapon *per se* sufficient to support that threat of physical harm is imminent and defendant intends to act violently). Finally, the First Circuit found the carjacking scienter element satisfied, and upheld the conviction, where evidence showed that one defendant placed a gun against the driver's head and threatened him at the inception of the carjacking. *United States v. Lebron-Cepeda*, 324 F.3d 52 (1st Cir.), *cert. denied*, *Caraballo-Gonzalez v. United States*, 540 U.S. 892 (2003). That evidence permitted the inference that the defendant would have shot the driver had the driver failed to relinquish control of the car, and that reasonable inference was sufficient to satisfy *Holloway*'s requirement that intent to kill or harm modify the car's taking. *Id*. at 57 (stating that defendant "would have

13

shot" victim if victim "failed to comply" with demand to turn over the car).

Harris relies primarily on *Holloway* and *Applewhaite* to argue that the evidence adduced at trial supports, even with reasonable inferences, only a homicide and a misappropriation of Ceniceros's car, but not a carjacking as defined by § 2119. Harris argues that he logically took the car after killing Ceniceros, in order to leave the scene (an oil field some 20 miles from the nearest town) and avoid detection. Also, Harris argues the evidence supports possibilities other than the Government's theory, including that the killing of Ceniceros was motivated by animus toward homosexuals, was a "thrill" killing, or was done in self-defense. These latter arguments, of course, address the weight of the evidence and witness credibility, neither of which is relevant to evidence sufficiency review. *See United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993). We do not evaluate Harris's alternative explanations of the events surrounding Ceniceros's killing. Rather, we look to the evidence in the light most favorable to the verdict, and ask whether it and reasonable inferences from it demonstrate that, at the precise moment Harris took Ceniceros's Mustang, Harris intended to cause death or serious bodily harm. *See Holloway*, 526 U.S. at 8, 11-12.

The Government concedes there was no direct evidence as to how Harris came to be in the same car with Ceniceros but argues the

14

circumstantial evidence supported a reasonable conclusion that Harris formed an intent to kill or harm Ceniceros in order to gain his car and that Harris took the car by killing Ceniceros. The Government argues that the jury might have rejected Harris's testimony of the two men riding around together in the earlier morning hours because Harris did not mention the phone calls made by Ceniceros and instead concluded Harris's first contact with Ceniceros was after 4:14 a.m. on May 25, 2002, the time of the last call. The Government also contends the evidence supports the reasonable conclusion that Harris possessed the black handgun, which killed Ceniceros, before the night and early morning in question, when he came into contact with Ceniceros; that Harris explained to others later that "the faggot will never touch anybody again" and that he had shot "a Spanish guy" 10 or 11 times; that Harris complained every time he tried to leave Texas, something went wrong; and that Harris could not leave Texas because the car he stole had broken down. Based upon all of this evidence and reasonable inferences from it, the Government argues a reasonable jury could conclude that sometime early in the morning of May 25, 2002, Harris decided to take Ceniceros's car for the purpose of leaving Texas and killed Ceniceros in order to do so.

But even permitting inferences and viewing the evidence in the light most favorable to the verdict, there was no evidence, aside from Harris's own testimony, of the "precise moment" that Harris demanded or took control of the car. The Government need not show

*why* Harris took the car; but it must show that, at the moment he did, he intended to kill or harm Ceniceros. *See Holloway*, 526 U.S. at 8, 11-12. No reasonable inference can be made from the Government's case or from its cross-examination of Harris which permits a rational jury to conclude that Harris intended to kill or harm Ceniceros when he demanded or took control of the car. To the contrary, the record makes clear that the two in some manner found themselves in Ceniceros's car together and ultimately stopped in a remote oil field; that Harris, if his intention were to leave Texas by car, had a habit of requesting and gaining permission to borrow his father's car when needed; that about the time of the killing, Harris possessed a car titled in his father's name; that Harris shot Ceniceros outside of the car, to which Harris clearly, in order to arrive at the remote field, had already gained access. The record does not resolve in any respect whether Harris initially gained access to the car by Ceniceros's consent or encouragement. The applicable standard permits sufficiency of evidence even in the absence of direct evidence; but on this record, nothing supports a reasonable inference as to Harris's intent at the precise moment he demanded or took control of the car. Speculation may resolve the timing of Harris's intent and actions that night, but speculation on the basis of evidence does not a reasonable inference make. *See United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (noting that "an inference must be more than speculation and conjecture to

16

be reasonable"). The jury had no evidence upon which to determine whether Harris possessed intent to kill or harm at the moment of the taking. Under the express language of § 2119, which permits federal prosecutions of a particular type of robbery, and under *Holloway*, such a gap is fatal to the Government's case on this record.

The evidence adduced in this case parallels that in *Applewhaite*, where the carjacking conviction was reversed, in important respects. In *Applewhaite*, the Third Circuit similarly addressed *Holloway*'s nexus requirement in light of unusual factual circumstances, as opposed to the typical facts of a carjacking. In both *Applewhaite* and the instant case, the evidence of force used against the victim constitutes minimally an assault, and in this case a killing, but does not show, without pure conjecture, that the force was the means of stealing the car. *See Applewhaite*, 195 F.3d at 686. Here, as in *Applewhaite*, it is uncontested that Harris took Ceniceros's car after Ceniceros was shot. "But that does not establish that the force was used to get control of [the car]." *Id*. at 685. Thus, here just as in *Applewhaite*, "the prosecution failed to establish the required nexus" between the intent to kill or harm and the taking of the car. *See id*. Although intent to kill or harm may be reasonably inferred from the evidence of violence or threat present in both cases (here, due to the shooting), the element of contemporaneousness between the

17

taking and the intent to kill or harm cannot be shown when no evidence exists in the record to reasonably determine that element beyond a reasonable doubt. Here, reasonable inferences from the evidence adduced against Harris in no way resolve whether the taking of the car was a mere "afterthought" to the killing of Ceniceros, *see Applewhaite*, 195 F.3d at 685, or whether at the precise moment the car was taken, Harris intended to kill or harm Ceniceros "if necessary to steal the car," *see Diaz*, 248 F.3d at 1098.

Moreover, this case differs dramatically from the cases in which other circuits have sustained convictions under § 2119 after *Holloway*, finding sufficient evidence of intent to kill or harm at the moment of the taking. Here, unlike *Lebron-Cepeda* and *Adams*, there is no evidence that Harris threatened Ceniceros or used force against him at the inception of the carjacking — that is, at the moment Harris demanded control of the car. *Cf. Lebron-Cepeda*, 324 F.3d at 57 (finding evidence that defendant placed loaded gun to the head of the victim and threatened victim at the moment he demanded the victim turn over the car sufficient under *Holloway*); *Adams*, 265 F.3d at 424-25 (finding threat of physical harm actual and imminent where defendant touched victim with weapon at the moment he demanded the car and attempted to enter the vehicle against the will of the driver). *See also*, *e.g.*, *United States v. Evans-Garcia*, 322 F.3d 110 (1st Cir.), *cert. denied*, 540 U.S. 1027

18

(2003); *United States v. Glover*, 265 F.3d 337 (6th Cir. 2001), *cert. denied*, 534 U.S. 1145 (2002); *United States v. Wright*, 246 F.3d 1123 (8th Cir.), *cert. denied*, 534 U.S. 919 (2001); *United States v. Malone*, 222 F.3d 1286 (10th Cir.), *cert. denied*, 531 U.S. 1028 (2000); *United States v. Wilson*, 198 F.3d 467 (4th Cir. 1999), *cert. denied*, 529 U.S. 1076 (2000); *United States v. Jones*, 188 F.3d 773 (7th Cir.), *cert. denied*, 528 U.S. 1033 (1999).

The Government must show a nexus between the intent to kill or harm and the taking of the car at the precise moment of either the taking of the car or the threat to do so. *See Holloway*, 526 U.S. at 8; *see also Diaz*, 248 F.3d at 1096. On this record, the Government has failed to carry its burden. Factually, the circumstances, viewed in the light most favorable to the verdict, upon which carjacking is based in this case are atypical. We note the following significant differences between this case as compared to more typical factual scenarios. Here, there is no testimony as to the precise circumstances surrounding the moment in which the defendant demanded or took control of the car, aside from the defendant's own testimony; nor is there physical evidence illuminating that moment in time. Also, the record is void of testimony that the defendant threatened the victim at the moment he demanded or took control of the car. Finally, the record reveals no evidence as to when and how the defendant came to be in the victim's car, except the defendant's own testimony that he was

hitchhiking back to town and that Ceniceros volunteered to give him a ride.  The government's speculation that Harris formed an intent to kill Ceniceros if necessary to take Ceniceros's car sometime in the late evening or early morning of their ride together, based solely upon Harris's statement that every time he tries to leave Texas something goes wrong and Harris's possession of the gun, is insufficient to bear a conviction under the statute as drafted by Congress.

The jury's own special verdict supports our conclusion that the evidence was insufficient to sustain the conviction.  The jury instruction, in relevant part, stated:

| | |
|---|---|
| *First*: | That the defendant intentionally took from a person a motor vehicle described in the indictment; |
| *Second*: | That the motor vehicle had been transported in interstate commerce; |
| *Third*: | That the defendant did so by means of force and violence; |
| *Fourth*: | That the defendant intended to cause death or serious bodily injury; and |
| *Fifth*: | That death resulted.[3] |

Upon the agreement of both counsel, the Court charged the jury to answer a verdict form, which included the following special interrogatory:  "If you have found the Defendant guilty of Count One [carjacking] and/or Count Two [use of a firearm during a crime

_____

[3]Although the instruction facially omits the requisite element of connection in time between intent to kill or harm and the taking of the car, we decline to address Harris's arguments of plain error in instruction, given that reversal is mandated on grounds of insufficient evidence.

20

of violence], answer the following question:  We the Jury find that the killing of Paul John Ceniceros constitutes . . . 1st Degree Murder/2nd Degree Murder/Voluntary Manslaughter/Involuntary Manslaughter."  The jury both circled "Voluntary Manslaughter" and wrote those words in the provided space.

With respect to the special verdict, the jury charge instructed, in relevant part:

> "Voluntary Manslaughter" means the unlawful killing of a human being without malice.  For you to find the killing constitutes voluntary manslaughter, you must be convinced that the government proved each of the following beyond a reasonable doubt:
> That the defendant unlawfully killed Paul John Ceniceros [and]
> That the defendant did so without malice, that is, upon a sudden quarrel or heat of passion. . . .
> The term "heat of passion" means a passion of fear or rage in which the defendant loses his normal self-control as a result of circumstances that would provoke such a passion in an ordinary person, but which did not justify the use of deadly force.

In classifying Harris's killing of Ceniceros as voluntary manslaughter, the jury rejected a finding of murder which, according to the instructions, required malice aforethought and included killings accompanied by "an intent to kill."[4]

In order to find that Harris's killing constituted murder, the jury was instructed:

> "Murder" means the unlawful killing of a human being with

_____

[4]The instructions charged that to "kill 'with malice aforethought' means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life."

21

malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

For you to find the killing constituted first degree murder, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
    That the defendant unlawfully killed Paul John Ceniceros;
    That the defendant killed [Ceniceros] with malice aforethought;
    That the killing was premeditated; and
    That the killing took place within the territorial jurisdiction of the United States.

To kill with "malice aforethought" means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life. To find malice aforethought, you need not be convinced that the defendant hated the person killed, or felt ill will toward the victim at the time.

In determining whether the killing was with malice aforethought, you may consider the use of a weapon or instrument and the manner in which death was caused.

A killing is "premeditated" when it is the result of planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent.

Next, the court instructed the jury regarding the alternative finding of second degree murder:

Any other murder is murder in the second degree. For you to find the killing constitutes second degree murder, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

22

> That the defendant unlawfully killed [Ceniceros];
> That the defendant killed [Ceniceros] with malice aforethought;
> That the killing took place within the territorial jurisdiction of the United States.
>
> To kill "with malice aforethought" means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life. To find malice aforethought, you need not be convinced that the defendant hated the person killed, or felt ill will toward the victim at the time.

Necessarily, the jury's finding of voluntary manslaughter rejects the alternate choice of murder in either the first or second degree, both of which encompass by definition an intent to kill. The only evidence adduced of Harris's interactions with Ceniceros that would support a finding of "sudden quarrel" or "passion of fear or rage," which supports the finding of voluntary manslaughter, arose from Harris's own testimony. Thus, the jury's special verdict validating that testimony dictates that the jury credited at least a portion of Harris's testimony. At a minimum, the jury credited the only evidence regarding Harris's and Ceniceros's interaction at the moment of the shooting — that is, Harris's version of what happened at the moment Harris employed force or violence that resulted in Ceniceros's death.

In addition to the lack of sufficient evidence to support a required element of the carjacking conviction, the jury's ultimate special finding that the killing was voluntary manslaughter indicates that the jury considered the question of the timing of Harris's intent to kill or harm. Based upon the jury instructions,

the jury could have characterized the homicide as "murder," based upon the contemporaneousness of the killing and a robbery of the car.[5]  Also, the jury might have selected murder, on the basis of the instructions, had it found sufficient evidence of intent to kill.  Were the taking of the car and the killing contemporaneous in the absence of a heat of passion killing, the jury could have found murder.  The jury did not select murder, however, and instead determined, by finding voluntary manslaughter, that the killing did not occur during the course of a robbery or have the element of malice.

We must, therefore, conclude that the jury determined the nexus was lacking between the killing and the taking of the car.  In the absence of sufficient evidence to conclude that a reasonable jury could have found a nexus and in the presence of a jury's special verdict positively indicating that it found no nexus existed, it cannot be said that the Government proved beyond a reasonable doubt that Harris intended to cause death or serious bodily harm at the precise moment he took or attempted to take the car from Ceniceros.

Considering the record in the light most favorable to the verdict, the evidence adduced, including all reasonable inferences permitted therefrom, requires a reasonable jury to conclude that a reasonable doubt yet exists as to the requisite element that Harris

---

[5]We note that "robbery" was not defined for the jury.

24

intended to kill or harm "at the precise moment he demanded or took control over the car 'by force and violence or by intimidation.'" *See Holloway*, 526 U.S. at 8; *see also Alarcon*, 261 F.3d at 421-22 (internal citations omitted). For this reason, what might have successfully been prosecuted as a homicide in the state courts of Texas fails to meet Congress's requirements for federal prosecution of carjacking under 18 U.S.C. § 2119.

After independent review of the record and based upon the evidence adduced at trial, only speculation would permit a showing of this requisite intent. Such a conjectural showing is insufficient to support the conviction. Because a rational jury on this record of unusual factual circumstances could not have determined beyond a reasonable doubt that, at the precise moment Harris demanded or took control over the car by force and violence or by intimidation, Harris intended to cause Ceniceros death or serious bodily harm, we reverse Harris's conviction of carjacking under count one of the indictment. In light of this disposition, we need not reach Harris's additional claims of error.

## II. Conviction for Use of Firearm During Crime of Violence

Because we reverse Harris's carjacking conviction, his count two conviction for use of a firearm during a crime of violence, under 18 U.S.C. § 924(c)(1) and (j), must necessarily be vacated. In order to show such a violation, the Government must prove, in part, that Harris committed a crime of violence. *See* 18 U.S.C. §

25

924(c)(1); *see also United States v. Burton*, 324 F.3d 768, 770-71 (5th Cir. 2003). Here, the jury was so instructed. The first of four elements, required for a conviction under count two, was that Harris "committed the crime alleged in Count One. I instruct you that carjacking is a crime of violence." In the absence of the Government's proof of the predicate crime of violence, here carjacking, the conviction for use of a firearm during a crime of violence is also reversed and the relevant sentence vacated. *See Burton*, 324 F.3d at 770-71.

### Conclusion

Based upon the foregoing, we REVERSE Harris's convictions for carjacking and use of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 2119 and 924(c)(1) and (j), and VACATE his corresponding sentences. Accordingly, we REMAND to the district court for entry of a judgment of acquittal on both counts. **REVERSED; VACATED; REMANDED with instructions for entry of judgment of acquittal.**