NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0620n.06
Filed: August 24, 2007

No. 06-5701

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA , ) | |
| ) | |
| Plaintiff-Appellee, ) | ON APPEAL FROM THE |
| ) | UNITED STATES DISTRICT |
| v. ) | COURT FOR THE EASTERN |
| ) | DISTRICT OF TENNESSEE |
| JODY WAYNE COMPTON, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

BEFORE:    KEITH, MOORE, and COLE, Circuit Judges.

**DAMON J. KEITH, Circuit Judge**.    Defendant-Appellant Jody Wayne Compton ("Compton") was charged in a one-count indictment in connection with a carjacking, in violation of 18 U.S.C. §§ 2119 and 2.  After a jury trial, Compton was convicted and sentenced to 180 months of imprisonment.  Compton now appeals his conviction, claiming there was insufficient evidence to sustain his conviction.  In particular, Compton argues that he lacked the specific intent required to be convicted under the carjacking statute.  For the reasons that follow, we **AFFIRM** Compton's conviction.

**I. BACKGROUND**

Defendant-Appellant Compton and his co-defendant Angela Haynes ("Haynes") were charged with carjacking. Haynes subsequently pled guilty to carjacking pursuant to a plea agreement. Compton was tried and convicted by a jury. According to the testimony at trial, in addition to a surveillance video that captured the entire incident, the following facts were revealed.

On March 14, 2005, Compton and Haynes were riding in Compton's Uncle's car in search of a place to have sex. Their search ended prematurely when the brakes on the car overheated. Compton and Haynes then proceeded, by getting a ride, to the residence of Clarence Overbay ("Overbay"), a place Haynes would often go to drink liquor and eat food.[1] Overbay lived three to four miles from where the car malfunctioned. Upon arriving at Overbay's residence, Compton and Haynes began drinking and sitting around the apartment. While at the residence, Barbara Greer ("Greer"), Overbay's caretaker (who was also responsible for cleaning his home), ordered Compton and Haynes to leave or she would call the police.[2] After leaving Overbay's residence, Compton and Haynes telephoned some friends to get a ride back to the malfunctioned car. However, all of their calls were unsuccessful. Seeing that the walk back to their car was too long in the cold weather, they proceeded to walk to a Conoco (a gas station and store) located right in front of Overbay's apartment.

A short time after arriving at the store, and while Compton and Haynes were trying to get a

---

[1] The record indicates that Clarence Overbay was in his seventies. Haynes had befriended him, and he would help her out by providing her food and a place to stay when she had nowhere else to go.

[2] Greer testified that Overbay's daughter specifically instructed her "that no one was to go in [her father's] apartment getting drunk or partying or stealing off of him and to tell them to leave[.]" (J.A. at 34).

ride to their car, Greer drove into the store's parking lot and parked her car. She exited her car and proceeded inside the store, with her car keys on an elastic band around her arm with other jewelry. As Greer walked past Haynes and Compton to enter the store, Haynes asked Greer, "do you have something smart to say now."[3] (J.A. at 60). Greer did not respond and entered the store. Compton then said to Haynes, "why did you even let her get in there, you should have hit her then." *Id*. at 63. As Greer exited the store, Haynes immediately attacked her, hitting her on the side of her jaw.[4] Greer went down, and Haynes continued to beat her. As the beating continued, a struggle ensued over Greer's keys, as Haynes tried to take them from her possession. Greer testified that "I tried to keep them, but I couldn't. My arm was damaged from the fight over the keys, and she got them." *Id*. at 36. As Haynes continued to beat Greer, Sabrina Holder ("Holder"), a store patron who witnessed the attack, jumped out of her car and screamed "I'm calling 911." *Id*. at 26. A few seconds after she screamed, Holder testified that Compton jumped in the fight, moved Haynes aside, and started to hit Greer as well. Compton continued to hit Greer, ultimately ramming her head against a pole, causing her to lose consciousness.

After Greer lost consciousness, Compton and Haynes, without any communication between them, and with Greer's car keys in Haynes's possession, headed straight to Greer's car. As they approached Greer's car, Compton told Haynes to "unlock [the passenger side] door," and Haynes responded, "I got to unlock mine first." (J.A. at 62). Compton and Haynes then got into Greer's car

---

[3] According to Greer's testimony, as she walked by, Haynes asked if Greer "wanted a piece of her." (J.A. at 35).

[4] Haynes testified that Greer was her enemy and that they had several confrontations in the past.

and drove off the scene. While driving from the scene, Compton and Haynes discussed what just occurred. According to Haynes, they discussed the moment Compton jumped in the fight between her and Greer, and how Compton said "quit fighting" as he pushed her aside. *Id*. at 74-75, 79-80. Haynes testified that during their discussion, Compton disclosed that he said "quit fighting" "only to make people think he was coming to break [] up" the fight. *Id*. at 79.[5] She further testified that Compton then said, laughingly, "did you see what I did to the bitch?" *Id*. at 80.

Compton and Haynes then drove Greer's car from Tennessee to Maryland. On March 19, 2005, five days after they took the car from Greer's possession, Compton and Haynes started their return trip to Tennessee. During their return trip, however, they ran out of gas. They left the car to retrieve some gas, and upon their return, the police had surrounded the car. This prompted Compton and Haynes to flee the area. Compton eventually called Rebecca Hill ("Hill"), his former girlfriend, to pick them up. Hill drove from Tennessee to Virginia to pick up Compton and Haynes. Hill took them back to her house, and shortly after arriving, the police arrived and arrested Compton for a probation violation.

On August 9, 2005, a one-count indictment was filed in the Eastern District of Tennessee, charging Compton and Haynes with taking a motor vehicle with the intent to cause serious bodily harm and death, in violation of 18 U.S.C. §§ 2119 and 2. On February 13, 2006, Haynes pled guilty to the one-count indictment pursuant to a plea agreement with the Government. On February 28,

---

[5]On cross-examination, Compton's attorney initially introduced Haynes's signed statement stating (without explanation) that when Compton intervened, he first told the two ladies to "quit fighting." However, on re-direct by the Government, Haynes' further explained that Compton only said "quit fighting" to make people think he was trying to break up the fight.

2006, Compton was tried by a jury, and on the same day, the jury returned a verdict finding Compton guilty of carjacking. On May 15, 2005, Compton was sentenced to 180 months of imprisonment. On May 24, 2006, the judgment was entered. Compton timely filed the instant appeal.

## II. ANALYSIS

### A. Standard of Review

"In determining the sufficiency of the evidence to support a guilty verdict 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "'We do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury.'" *United States v. Glover*, 265 F.3d 337, 341 (6th Cir. 2001) (quoting *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). "[A] defendant claiming insufficiency of the evidence bears a *very* heavy burden," *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (quotation marks omitted) (emphasis added), and we "'will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and . . . this rule applies whether the evidence is direct or wholly circumstantial.'" *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984)). Also, "[i]t is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Id*.

### B. Discussion

Compton argues that there was insufficient evidence to prove that he intended to participate

in the carjacking. Specifically, Compton contends that he did not form the intent to participate in the carjacking until after the assault ended, thus "there is no nexus between the intent to cause death or serious bodily harm and the taking of [Greer's] vehicle." (Appellant's Br. 5). In light of the evidence, this argument is wholly unpersuasive.

> Compton challenges his conviction under the carjacking statute, which provides:

> Whoever, with the intent to cause death or serious bodily harm, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall . . . be fined under this title or imprisoned not more than 15 years, or both . . . .

18 U.S.C. § 2119. In *Holloway v. United States*, 526 U.S. 1 (1999), the Supreme Court addressed the carjacking statute, and the Government's burden in satisfying the intent requirement. The Supreme Court held that "[t]he intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." *Id*. at 12. Therefore, the question before us is whether, in the light most favorable to the Government, the evidence offered at trial would permit *any* rational trier of fact to conclude, beyond a reasonable doubt, that Compton possessed the intent to seriously harm or kill Greer at the moment he and Haynes "demanded or took control" of Greer's vehicle. We answer in the affirmative.

The evidence shows that Greer had ordered Compton and Haynes to exit the home of Overbay; that Compton and Haynes found themselves stranded—three to four miles away from their malfunctioned car—and in need of a ride; that it was too cold to walk back to their car and all of

their phone calls asking others for a ride had been unsuccessful; that Compton and Haynes then walked to the store in front of Overbay's apartment; that, while at the store, Greer pulled up in her car, and walked in front of Compton and Haynes as she entered the store; that, upon exiting the store, Haynes attacked Greer; that during the fight, Haynes tried to take Greer's car keys (which were visibly worn on her arm); that Compton watched the attack and the struggle that ensued over Greer's keys; that he intervened after a witness screamed "I'm calling 911"; that, as he intervened, he uttered the words "quit fighting"; that he then began attacking Greer, ultimately knocking her unconscious after hitting her head on a pole; that after Greer was unconscious, Compton and Haynes, *without any communication*, uniformly proceeded straight to Greer's car; that on the way to Greer's car, Compton told Haynes to unlock his door; and that, after fleeing from the scene in Greer's car, Compton said the only reason he uttered the words "quit fighting" was to make people think he was trying to break up the fight in case the surveillance camera had sound.

Contrary to Compton's contention (that he did not have an intent to take Greer's car prior to or during the assault), and giving the Government the benefit of all reasonably drawn inferences, *see United States v. Sawyers*, 409 F.3d 732, 735 (6th. Cir 2005), a review of this evidence shows that a rational trier of fact could have found that Compton possessed the intent to cause serious bodily harm or death at the time he and Haynes "demanded or took control" of Greer's car. Indeed, while stranded and in need of a ride, Compton urged Haynes to attack Greer, watched as Haynes attempted to take her car keys, and intervened after someone threatened to alert the police. A jury could reasonably infer that Compton intervened in the fight in order to help secure Greer's keys (for the purposes of taking her car), especially after hearing Holder scream "I'm calling 911." (J.A. at

26). His intervention— attacking and beating Greer, and ultimately ramming her head into a pole, knocking her unconscious—undoubtably caused serious bodily harm to Greer, and certainly helped secure Greer's keys and subsequently her car. Any doubt about Compton's role or "intent to cause serious bodily harm or death" in the taking of Greer's keys is chilled by his statements (in a laughing manner) after the incident—"did you see what I did to the bitch?" *Id*. at 80.

Compton also claims that Greer's car keys "miraculously" appeared in Haynes's hand after the fight, and that he only followed her to Greer's car. This argument is also unavailing. As stated above, a reasonable jury could infer that Compton intervened in the fight in order to help Haynes secure Greer's keys. Also, Greer testified that Haynes intentionally tried to get her keys during the fight, and she "tried to keep them [away from Haynes], but . . . couldn't." *Id*. at 36. Furthermore, Holder, the witness, testified that after the assault, Compton and Haynes went straight to Greer's car.

A review of the record as a whole shows substantial and competent facts from which a reasonable trier of fact could have found not only the intent element, but all the essential elements necessary to convict Compton under the carjacking statue.

Additionally, Compton's reliance on *United States v. Harris*, 420 F.3d 467 (5th Cir. 2005) and *United States v. Applewhaite*, 195 F.3d 679 (3d. Cir. 1999) is misguided. In *Harris* and *Applewhaite*, the Fifth and Third Circuits, respectively, concluded that the defendant's conviction under the carjacking statute was precluded since the evidence did not support the finding of the intent requirement under §2119. Here, on the other hand, the record does provide such a showing, and accordingly, Compton's conviction must stand.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** Compton's conviction under 18 U.S.C. § 2119.