# United States Court of Appeals
## For the First Circuit

No. 01-2617

UNITED STATES,

Appellee,

v.

HAROLD EVANS-GARCIA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Alexander Zeno for appellant.
Daniel J. Vaccaro, Assistant United States Attorney, with whom
H. S. Garcia, United States Attorney, Sonia I. Torres, Assistant
United States Attorney, and Thomas F. Klumper, Assistant United
States Attorney, were on brief, for appellee.

March 19, 2003

**STAHL**, **Senior Circuit Judge**.  Defendant-appellant Harold Evans-García appeals from his conviction of aiding and abetting a carjacking, 18 U.S.C. §§ 2 and 2119(3), and a related firearms offense, id. §§ 2 and 924(c)(1).  He contends that there was insufficient evidence from which a jury could conclude that he intended, or knew that his co-defendants intended, to inflict death or serious bodily harm as required by the carjacking statute.  We disagree, and accordingly affirm Evans-García's conviction and sentence.

## I.  Background

We set forth the trial evidence in the light most favorable to the prosecution.  United States v. Baltas, 236 F.3d 27, 35 (1st Cir. 2001).  On March 23, 1996, Evans-García and five co-defendants -- Victor Lebrón-Cepeda, Francisco Trinidad-Kuilan, Luis R. Pagan-Melendez, Elvis Quiñones-Cruz, and Xavier Hernández-San Miguel -- went to the El Valle Puerto Real Housing Project.  Earlier in the evening, Trinidad had informed the group that he was carrying a nickel-plated .38 caliber revolver.

At the housing project, Evans-García and co-defendants Lebrón, Quiñones, and Trinidad went off to talk amongst themselves.  While they were talking, Trinidad handed the revolver to Lebrón.  Evans-García then informed Hernández that they were going to commit a carjacking.  Hernández agreed to take them in his vehicle.[1]

---

[1]Trinidad and Pagan decided not to accompany the others.

-2-

Somewhat later, Evans-García, Lebrón, Hernández and Quiñones picked up co-defendant José R. Caraballo-González at the VeVe Calzado Housing Project. Hernández drove the four others to the Parque Pasivo Las Croabas, Fajardo, Puerto Rico. There, he and Quiñones dropped off Evans-García, Lebrón, and Caraballo and left the park. Parked nearby was a red 1994 Hyundai belonging to Ivan Fontánez-Bruno. In the car were Fontánez and Daisy Torres-Muñiz, both Puerto Rico Police Department cadets. The Hyundai was built in Korea and shipped in interstate or foreign commerce.

While parked, Fontánez and Torres noticed that Evans-García, Lebrón, and Caraballo were behaving suspiciously, and they decided to leave. Before they could do so, the three men surrounded the car, with Evans-García on the passenger side. Caraballo pointed a nickel-plated .38 revolver at Fontánez's head.[2] When Fontánez attempted to pull his police-issued firearm, Caraballo told Fontánez "not to pull anything" because he had his firearm already cocked. Evans-García then ordered Fontánez and Torres out of the car and into the rear passenger seat; Fontánez dropped his firearm during this process. Evans-García sat in the front passenger seat and picked up Fontánez's firearm.

Caraballo took the driver's seat and gave the cocked revolver to Lebrón, who sat in the rear passenger seat. Lebrón

---

[2]It is unclear whether this was the same firearm that Trinidad handed to Lebrón earlier in the evening.

then held the firearm to Fontánez's head.  As they drove out of the park, Evans-García accused Fontánez of being a police officer. When Fontánez and Torres begged for the defendants to release them and not to kill them, Caraballo and Lebrón informed them that it was "not their style" and that Fontánez and Torres already knew where they were going, to which Evans-García added, "to the cemetery."  Evans-García instructed Lebrón to take the victims' money and jewelry.

As they were driving, the car collided with something, causing the front bumper to come loose and drag on the road.  At that point, Evans-García again accused Fontánez of being a police officer.  Immediately thereafter, Lebrón shot Fontánez once behind the ear.  After a very short interval -- no more than a minute -- Evans-García turned around and shot Fontánez approximately seven or eight times in the chest and abdomen.

After the shooting, Caraballo stopped the car.  Evans-García ordered that Fontánez's body be pulled out of the car.  He then pulled Torres out of the car on the passenger side and held her down by the hair.  Although Evans-García and Caraballo wanted to put her back in the car and kill her later, Lebrón persuaded them not to.  As the defendants drove off, Evans-García told Torres to run for her life.  The car dragged Fontánez's body for a short distance, until Evans-García freed it from the car door, leaving the body and a highly distraught Torres at the side of the road.

-4-

On February 4, 1998, a federal grand jury returned a six-count indictment against Evans-García and the four co-defendants. Evans-García was charged with aiding and abetting in an armed carjacking resulting in death, in violation of 18 U.S.C. §§ 2 and 2119(3), and aiding and abetting in the use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1). He pled not guilty.

Evans-García's jury trial was held in January, 2001.[3] At trial, he moved for acquittal, contending that the government had failed to prove its case with regard to the carjacking count. The district court denied the motion, and Evans-García was convicted on both counts. On October 5, 2001, the court sentenced Evans-García to two consecutive terms of life imprisonment pursuant to 18 U.S.C. § 924(c)(3).

## II.      Discussion

On appeal, Evans-García argues that there was insufficient evidence of his intent to aid and abet the carjacking to support his conviction and life sentences. We review all the evidence, direct and circumstantial, in the light most favorable to the prosecution, drawing all reasonable inferences consistent with the verdict and avoiding credibility judgments, to determine whether a rational jury could have found him guilty beyond a reasonable doubt. Baltas, 236 F.3d at 35.

---

[3]He was tried separately from his co-defendants.

As amended, the carjacking statute provides:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall --
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
> (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (1994 ed. and Supp. III).

In Holloway v. United States, 526 U.S. 1 (1999), the Supreme Court clarified that the intent of the defendant is to be assessed when he "took" the vehicle:

> The statute's mens rea component thus modifies the act of "tak[ing]" the motor vehicle. It directs the factfinder's attention to the defendant's state of mind at the precise moment he demanded or took control over the car "by force and violence or by intimidation."

Id. at 8. The Court further held that the intent to cause death or serious bodily harm could be satisfied not only by "actual" intent but also by "conditional" intent, i.e., a willingness to cause death or serious bodily harm if necessary to hijack the car. Id. at 11-12.

-6-

There is an additional layer in the analysis of Evans-García's intent in this case, as the indictment and judgment state that he was an aider and abetter in the offenses.[4] To be liable as an aider and abetter, a defendant must have "consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal." United States v. Otero-Mendez, 273 F.3d 46, 51 (1st Cir. 2001) (quoting United States v. Taylor, 54 F.3d 967, 975 (1st Cir. 1995)) (internal quotation marks omitted). The aider and abetter must have shared the principal's criminal intent; "[a] generalized suspicion is not enough." Id. at 52 (citing United States v. Loder, 23 F.3d 586, 591 (1st Cir. 1994)).[5]

During the course of this appeal, Evans-García's legal arguments have mutated. In his opening brief, he conceded that he was guilty of the crime of carjacking. He contended, however, that he lacked the specific intent to cause death, which he asserted was

---

[4]In its brief, the government contends that Evans-García was a principal in the carjacking, but that alternatively, his conviction should be affirmed based on aider and abetter liability.

[5]We recently noted, in the context of a carjacking case, the difficulty of "articulat[ing] a precise intent standard" for aiding and abetting. Otero-Mendez, 273 F.3d at 52. Although we have previously required evidence that the defendant was "on notice" of the principal's intent, we have not decided whether he must know to a "practical certainty." Id. (internal citations omitted.) We need not reach this issue in this case, as we conclude infra that a reasonable jury could have found that Evans-García knew to a practical certainty that his co-defendants intended to inflict death or serious bodily injury.

necessary to incur the enhanced penalty under 18 U.S.C. § 2119(3) ("if death results"). In his reply brief, Evans-García changed course, saying that he had initially misapprehended the statute, and argued that he lacked "the intent to cause death or serious bodily harm" at the time of the taking of the car and hence could not be found guilty of any carjacking under the statute. At oral argument, he continued to maintain that he was not liable for carjacking, and renewed the argument from his opening brief that he lacked the requisite intent for the enhanced penalty.

Arguments raised for the first time in reply briefs are generally deemed waived. United States v. Brennan, 994 F.2d 918, 922 n.7 (1st Cir. 1993). In any event, there is ample evidence to support the jury's conclusion that Evans-García possessed -- or knew that the principals possessed -- at least conditional intent to inflict death or bodily harm at the time he and his co-defendants took the car. First, the jury heard evidence that Evans-García was involved in the preparations for the carjacking. Co-defendant Pagan-Melendez testified that he observed Evans-García and two other co-defendants, Lebrón and Trinidad, engage in a discussion during which Trinidad handed a revolver to Lebrón. At the end of this discussion, Pagan-Melendez heard Evans-García say that "they were going to do a carjacking."

Second, Evans-García was an active participant in the carjacking itself. With his co-defendants, he surrounded the

victims' car to prevent them from exiting.  He was present when Caraballo placed the revolver to Fontánez's head and told him it was cocked.  He directed Torres to climb into the rear car seat and picked up Fontánez's firearm.  Significantly, there was evidence from which the jury could have found that Evans-García told the victims that they were on their way "to the cemetery."[6]

In sum, the use of the firearm and the co-defendants' statements provided sufficient evidence of their conditional intent to inflict injury or death if necessary to take control of Fontánez's car.  See Holloway, 526 U.S. at 11-12.  The trial record also supported the conclusion that Evans-García knew to a practical certainty that his co-defendants possessed this intent and indeed shared it, permitting the jury to find him liable as an aider and abetter.

Next, Evans-García maintains that subsection (3) does not apply because he lacked specific intent to cause Fontánez's death.  Such intent, he contends, is a requirement additional to that set forth in the body of § 2119, i.e., that the carjacker intended to cause death or serious bodily harm at the time he took the vehicle.  The government contends that no such additional specific intent to kill is required under 18 U.S.C. § 2119(3), and that subsection (3)

_____

[6]Evans-García contends that there were inconsistencies in Torres's trial testimony as to which defendant made this statement. A review of the record, however, indicates that there was ample evidence from which the jury could have credited Torres's testimony that it was Evans-García who said it.

concerns only the causal issue of whether death resulted from the carjacking. We need not delve into this question, as the evidence at trial supports the conclusion that Evans-García intended to cause death when he shot Fontánez.

Evans-García shot Fontánez seven or eight times in the chest and abdomen at close range, shortly after accusing Fontánez of being a police officer. Despite Evans-García's contention that his victim was already dead when he shot him, evidence at trial showed that either Lebrón's shot to the head or Evans-García's multiple shots less than a minute later could have caused Fontánez's death. This evidence, in conjunction with that set forth <u>supra</u>, supports the conclusion that Evans-García intended to kill Fontánez.

Accordingly, we **<u>AFFIRM</u>** Evans-García's carjacking conviction and sentence.