# United States Court of Appeals
## For the First Circuit

Nos. 04-1992
     04-1993

UNITED STATES OF AMERICA,

Appellee,

v.

YAMIL MATOS-QUIÑONES
and
JORGE ALBERTO ORTIZ-FELICIANO

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Lipez, Circuit Judges.

Nelson Pérez-Sosa, Assistant United States Attorney, with whom
H.S. García, United States Attorney, was on brief, for the United
States.
     Raymond E. Gillespie for Yamil Matos-Quiñones.
     Elaine Pourinski for Jorge Alberto Ortiz-Feliciano.

August 2, 2006

**LIPEZ, Circuit Judge**. Yamil Matos-Quiñones and Jorge Alberto Ortiz-Feliciano each pled guilty to one count of carjacking with intent to cause death or serious bodily harm, resulting in death. 18 U.S.C. § 2119(3). The victim was a sailor in the United States Navy, stationed in Puerto Rico. The district court sentenced both defendants to life imprisonment. The defendants now claim that the district court misunderstood and failed to explain the intent element of § 2119(3). They argue that, given a proper understanding of that intent element, the district court would not have found a rational basis for their pleas. They also contend that if the district court had explained the intent element of the carjacking charge as the Supreme Court explained it in Holloway v. United States, 526 U.S. 1 (1999), they would not have pleaded guilty. Defendant Matos-Quiñones alleges an additional error: that the government violated its plea agreement with him by urging the judge to impose a life sentence rather than a term of years. We affirm.

## I.

We draw the facts from the change of plea hearing, the pre-sentence report, and the factual stipulation agreed to by the government and defendant Matos-Quiñones. See United States v. Colón-Solis, 354 F.3d 101, 102 (1st Cir. 2004). We leave some details for discussion in connection with the defendants' allegations of error.

-2-

On a mission for their colleagues in the illegal drug business, the defendants were looking for a sports utility vehicle to steal. They saw a Toyota they liked outside a video rental store in Fajardo, Puerto Rico. When the Toyota's owner emerged from the store, the defendants approached him. Both defendants brandished handguns. Defendant Ortiz-Feliciano pressed his handgun against the victim's back and said, according to the FBI agent who investigated the crime, "get in the car if you want to live." The defendants seized the keys to the Toyota and ordered the victim, at gunpoint, to lie down in the rear of the vehicle. They then drove the stolen Toyota towards Rio Grande.

While driving, the defendants asked the victim where he lived. He said that he was a native of North Carolina but was living at the Navy base in Ceiba. Once Ortiz-Feliciano realized that the victim was a sailor, he decided to kill him. Several minutes later, the defendants stopped in a wooded area. When the victim attempted to escape, Matos-Quiñones hit him with his handgun. The defendants then led the victim into the nearby woods. Matos-Quiñones removed a piece of jewelry from the victim's person as the victim pleaded for his life. Then Ortiz-Feliciano shot the victim in the back of the head.

The defendants soon were apprehended and confessed essentially to the facts outlined above. Initially, Ortiz-Feliciano told investigators that Matos-Quiñones attempted to shoot

the victim but that his gun had jammed.  However, Matos-Quiñones denied either attempting to shoot the victim or intending that he be killed.  Federal authorities charged each defendant with aiding and abetting the other in one count of carjacking with intent to cause death or serious bodily injury, and two counts of firearms violations.  After consultation with counsel, the defendants agreed to plead guilty to the carjacking count.  In exchange, the government pledged not to seek the death penalty, to dismiss the firearms charges, to recommend a sentencing guideline level of 40 for both defendants, and to stipulate that Matos-Quiñones "was not the shooter of the victim and did not at any time intend that the victim be killed."

## II.

This case involves the relatively complex intent element of § 2119, the federal carjacking statute, which the parties interpret differently.  The arguments also reveal some confusion as to whether Matos-Quiñones's indictment as an aider and abettor somehow changes that intent element.  We provide some preliminary explanations before addressing the defendants' arguments.

## A. The Carjacking Statute

The statute to which the defendants pled guilty, 18 U.S.C. § 2119, reads:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person

or presence of another by force and violence or by intimidation, or attempts to do so, shall . . .

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

Contrary to the suggestion of the government, this statute is not a felony murder analog.[1]  See United States v. Rosario-Díaz, 202 F.3d 54, 63 (1st Cir. 2000) ("[C]arjacking is a specialized offense, requiring a specific criminal act and a narrow mens rea.").  Even "if death results," the statute requires "intent to cause death or serious bodily harm."  A felony murder statute is defined by the absence of any such intent element.[2]  Consequently,

---

[1] The government argues that "Matos-Quiñones overlooks the operation of the felony-murder rule," and that he "could be found guilty of first-degree murder . . . without any finding as to premeditation or a specific intent to kill."  That statement is misleading.  Federal law does incorporate a traditional felony-murder rule for homicides committed in federal enclaves and other places where the federal government has special law enforcement responsibility.  See 18 U.S.C. § 1111 (federal murder statute); 18 U.S.C. § 7 (defining "the special maritime and territorial jurisdiction of the United States," in which the federal murder statute applies).  However, the defendants were not indicted for violating § 1111.

The only potential applicability of the felony-murder rule here was in the sentencing proceedings.  That is because the sentencing guidelines reference the federal murder statute in connection with calculations of the base offense level for carjacking crimes.  See United States v. Martinez-Bermúdez, 387 F.3d 98, 100-101 (1st Cir. 2004) (explaining that the offense guideline for carjacking is U.S.S.G. § 2B3.1(c), which in turn references U.S.S.G. § 2A1.1 for offenses that would constitute murder under 18 U.S.C. § 1111 had they occurred "within the special maritime and territorial jurisdiction of the United States").

[2] For instance, 18 U.S.C. § 1111 defines a homicide as first-degree murder if it was "committed in the perpetration of . . .

-5-

the carjacking charges against the defendants required the government to prove not only that the defendants committed a carjacking and that they killed the victim, but also that they acted "with intent to cause death or serious bodily harm."[3]

### 1.  "Conditional Intent"

In Holloway, the Supreme Court confronted the meaning of the phrase "with the intent to cause death or serious bodily harm" in the carjacking statute.  The question in Holloway was "whether that phrase requires the government to prove that the defendant had an unconditional intent to kill or harm in all events, or whether it merely requires proof of an intent to kill or harm if necessary to effect a carjacking." 526 U.S. at 3.  The Court answered that question as follows:

> The specific issue in this case is what sort of evil motive Congress intended to describe when it used the words "with the intent to cause death or serious bodily harm" . . ..  More precisely, the question is whether a person who points a gun at a driver, having decided to pull the trigger if the driver does not comply with the demand for the car keys, possesses the intent, at that moment, to

robbery."  The federal robbery statute, 18 U.S.C. § 2111, contains no requirement that the perpetrator intend to inflict bodily injury or death.  So, under the federal felony-murder rule, a defendant can be convicted of first-degree murder even though he never intended (even conditionally) to inflict physical harm on the victim.  That is not the case under the carjacking statute.

[3] There has been at least one failed attempt to abolish the "intent to cause death or serious bodily harm" requirement from the carjacking statute.  See H.R. 4472, § 803(a), 109th Congress, 1st Session (2005).

-6-

> seriously harm the driver.  In our view, the answer to that question does not depend on whether the driver immediately hands over the keys or what the offender decides to do after he gains control over the car.  At the relevant moment, the offender plainly does have the forbidden intent.

Id. at 6-7.  In short, if this case had gone to trial, the government would have had to prove that the defendants a) took or attempted to take the victim's car through force and violence or by intimidation, b) that they acted with conditional or unconditional intent to cause death or serious bodily harm, and c) that death resulted.

### 2.  The "Relevant Moment" for Conditional Intent

We have encountered cases, including this case, where a carjacking defendant is accused of stealing a car, taking its driver as a hostage, and later killing or harming the driver even though the defendant already was in control of the car.  See, e.g., United States v. Lebrón-Cepeda, 324 F.3d 52, 56-57 (1st Cir. 2003) (concerning a defendant who argued that his intent to seriously harm or kill the victim had not developed until after he had seized control of the victim's car and realized that the victim was a police officer); United States v. Evans-Garcia, 322 F.3d 110, 112-13 (1st Cir. 2003) (same).  In these cases, defendants have suggested that they were not guilty of carjacking because their intent to harm or kill the victim did not exist at the beginning of the carjaking.  See id. at 114.  In other words, these defendants

-7-

contend that they could not be found guilty of carjacking if a jury finds that their intent to kill or seriously harm the driver developed only after the car had been taken. This interpretation of the carjacking statute stems from the several references in Holloway, as in the quotation above, to the carjacking defendant's intent as of the "moment" of a carjacking. The Court summarized its holding as follows:

> The intent requirement of § 2119 is satisfied when the Government proves that <u>at the moment the defendant demanded or took control over the driver's automobile</u> the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car).

Holloway, 526 U.S. at 12 (emphasis added).

The defendants contend that we have interpreted the above-quoted language in Holloway to mean that a defendant is not guilty of carjacking if his intent to kill or seriously harm the driver develops only after he has stolen the driver's car and taken the driver as a hostage. See Rosario-Díaz, 202 F.3d at 63 ("[T]he mental state required by the statute ('intent to cause death or serious bodily harm') is measured at the moment that the defendant demands or takes control of the vehicle."). Other circuits addressing this issue have decided that intent in a carjacking case must be measured at "the precise moment [the defendant] demanded or took control over the car." United States v. Harris, 420 F.3d 467, 478 (5th Cir. 2005) (internal quotation marks omitted); see also

-8-

United States v. Applewhaite, 195 F.3d 679, 685 (3d Cir. 1999) ("[T]he statute directs the factfinder's attention to the defendant's state of mind at the precise moment he demanded or took control over the car."). See also Hornby, Pattern Criminal Jury Instructions for the District Courts of the First Circuit, 2005 Revisions, 157, available at http://www.med.uscourts.gov/practices/Criminal_Jury_Instructions.pdf (last visited July 6, 2005) (citing Rosario-Díaz, 202 F.3d at 63 for the requirement that the carjacking defendant "intended to cause death or serious bodily harm at the time [he/she] demanded or took control of the motor vehicle").

The government takes a different view, arguing that the statute applies as long as the proscribed intent existed at any time while the defendants had control over the victim and his car. To that end, the government urges us to adopt a position set forth in a concurring opinion by a member of our court: that Holloway should not "be read to limit the jury's focus to the commencement of the carjacking in cases like this one, which . . . involve takings [of hostages] that occur over some period of time." Lebrón-Cepeda, 324 F.3d at 63 (Howard, J., concurring) (internal quotation marks omitted).[4]

---

[4] We also said the following in Ramos Burgos v. United States, 313 F.3d 23, 30 n.9 (1st Cir. 2002):

We do not here set forth the temporal limits of a carjacking under § 2119. But we reaffirm, without

-9-

As we will explain, the facts of this case, like those in Lebrón-Cepeda, do not require us to resolve the question whether the intent element for carjacking must be measured at the commencement of a prolonged carjacking. Accordingly, we will simply assume without deciding that the defendants' view of the issue is correct.

## B. Liability as an Accomplice in a Carjacking Case

The indictment reads that "aiding and abetting each other with the intent to cause death and serious bodily injury, [the defendants] did take a motor vehicle . . . from [the victim], by force and violence . . .." This charge indicted both defendants as principals and as aiders and abettors. See, e.g., United States v. Bennet, 75 F.3d 40, 47-48 (1st Cir. 1996) (analyzing a similar indictment). As it turns out, both defendants pled guilty as principals. There was, as we will explain, an ample factual basis for those pleas.

However, unwilling to fully acknowledge his culpability as a principal, Matos-Quiñones argues that the stipulation that he "was not the shooter of the victim and did not at any time intend that the victim be killed" means that he did not share Ortiz-Feliciano's criminal intent and could not be found guilty as Ortiz-Feliciano's accomplice. It is true that an aider and abettor

_____

hesitation, that the commission of a carjacking continues at least while the carjacker maintains control over the victim and her car.

-10-

"'must share in the principal's essential criminal intent.'"[5] United States v. Tarr, 589 F.2d 55, 59 (1st Cir. 1978) (quoting United States v. Sanborn, 563 F.2d 488, 491 (1st Cir. 1977)). See also, e.g., LaFave, Substantive Criminal Law, § 13.2(b) 2d ed. (2003) (an accomplice is liable only when he shares the "requisite mental state" for the principal's crime); Evans-Garcia, 322 F.3d at 314 ("The aider and abetter must have shared the principal's criminal intent."); United States v. Loder, 23 F.3d 586, 591 (1st Cir. 1994).[6] If § 2119 required proof of intent to kill, Matos-Quiñones, who "did not at any time intend that the victim be killed," could no more be guilty as an aider and abettor than he could as a principal.[7] However, the carjacking statute makes proof

---

[5] The challenge in aiding and abetting cases is framing this "vital element" for the jury. See Tarr, 589 F.2d at 59-60; see also United States v. Medina-Román, 376 F.3d 1, 3-4 (1st Cir. 2004) (discussing the historical basis for our aiding and abetting standard); United States v. Geronimo, 330 F.3d 67, 75 (1st Cir. 2003) (discussing our pattern jury instructions on aiding and abetting); United States v. Otero-Méndez, 273 F.3d 46, 52 (1st Cir. 2001) (discussing aiding and abetting liability for carjacking); United States v. Spinney, 65 F.3d 231, 234-35 (1st Cir. 1995) (recognizing that the two elements of aiding and abetting liability are that the principal committed the charged crime and that the accomplice "became associated with [the principal's criminal] endeavor and took part in it, intending to ensure its success").

[6] Where the mental state required of the principal is less than specific intent, the same is true of the mental state of the aider and abetter. See Geronimo, 330 F.3d at 74.

[7] The parties understand the stipulation to mean that Matos-Quiñones never had even a conditional intent to kill the victim. The government does not suggest that the stipulation could be read to mean that Matos-Quiñones did not want to kill the victim, but was willing to do so in order to steal the car.

-11-

of an intent to "seriously harm" the driver sufficient to impose liability. Holloway, 526 U.S. at 11. Matos-Quiñones's intent to inflict serious bodily harm on the victim was not the subject of any stipulation, and he could be guilty as a principal or as an aider and abettor on the basis of such intent.

## III.

We first address the overlapping issues common to both defendants: whether there was a factual basis for the intent element of the carjacking charge and whether any errors in the plea colloquy prevented a knowing and voluntary plea. We then address Matos-Quiñones's claim that the government violated its plea agreement with him.

## A. The Plea Colloquy

### 1. Standard of Review

Neither defendant objected to the district court's plea colloquy before taking this appeal. Indeed, while more than a year and a half passed between the guilty pleas and the sentencing hearings, neither defendant sought to withdraw his plea during that period. Accordingly, "we review only for plain error." United States v. Morrisette, 429 F.3d 318, 322 (1st Cir. 2005).[8] To earn

_____

[8] If the defendants had "call[ed] the district court's attention to the alleged errors in the plea proceedings," our review would be for abuse of discretion. United States v. Delgado-Hernández, 420 F.3d 16, 19 (1st Cir. 2005). The abuse of discretion standard also would apply if the defendants had made a motion after the plea hearing, but before sentencing, to withdraw their pleas pursuant to Rule 11(d)(2)(B). See United States v.

-12-

relief, the defendants must show (1) that an error occurred, and that the error (2) was "clear or obvious," (3) affected their "substantial rights," and (4) "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.33 56, 60 (1st Cir. 2001). To meet prong three, each defendant "is obliged to show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004).

## 2. Basis in Fact for the Pleas

The defendants contend that the district court violated Fed. R. Crim. P. 11 by accepting their guilty pleas in the absence of a factual basis for the intent element of the carjacking charge. Their claim is that they did not have any intent to harm or kill the victim until after they had seized his car and learned while driving towards Rio Grande that he was a sailor. Hence, they argue, their intent to harm or kill did not meet the "at the moment" requirement of Holloway. As we indicated above, we will assume the validity of the defendants' reading of Holloway.

Rule 11 requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). We have explained that the district court "has a duty," in plea proceedings, "to ascertain whether the record permits a conclusion that the plea has a

_____

Mescual-Cruz, 387 F.3d 1, 6 (1st Cir. 2004).

-13-

rational basis in fact." United States v. Negrón-Narváez, 403 F.3d 33, 37 (1st Cir. 2005). However, Rule 11 does not require "a test of guilt versus innocence," id., much less proof "'beyond a reasonable doubt that the defendant is in fact guilty,'" id. (quoting United States v. Webb, 433 F.2d 400, 403 (1st Cir. 1970)). The idea is for the district court to ensure that there is, on the record as it stands at the time of the plea, a reasoned basis to believe that the defendant actually committed the crime to which he is admitting guilt. See United States v. Cheal, 389 F.3d 35, 41 (1st Cir. 2004). The facts relevant to this inquiry "may come either from the defendant's admissions and concessions or from credible evidence proffered by the government and not contradicted by the defendant." Negrón-Narváez, 403 F.3d at 37.

First, as to Ortiz-Feliciano, the evidence proffered by the government easily met the requisite standard, even under his interpretation of the law. To take the victim's car, Ortiz-Feliciano pressed a loaded handgun against the victim's body and threatened the victim with death. The presence of ammunition, the death threats, and the fact that he eventually did kill the victim, provide a rational basis to believe that Ortiz-Feliciano was willing to fire his gun if necessary to steal the car. See Lebrón-Cepeda, 324 F.3d at 56-57 (1st Cir. 2004) (holding that conditional intent to kill could be inferred as to two defendants from fact that one of the defendants "placed a loaded and cocked revolver

against [the victim's] head . . . and verbally threatened him").
See also United States v. Jones, 188 F.3d 773, 777 (7th Cir. 1999)
(holding that conditional intent could be inferred from brandishing
of handgun and death threats).

The stipulation between the government and Matos-Quiñones
precludes any rational basis to believe that he, too, had a
conditional intent to kill the victim.  However, as we indicated
above, the intent element of the carjacking statute requires that
"at the moment the defendant demanded or took control over the
driver's automobile the defendant possessed the intent to seriously
harm or kill the driver if necessary to steal the car."  Holloway,
526 U.S. at 11 (emphasis added).  The record provides a factual
basis that Matos-Quiñones had the requisite intent "to seriously
harm."  Like Ortiz-Feliciano, he threatened the victim with a
handgun at the moment of the carjacking.  He later demonstrated his
willingness to inflict violent harm when he struck the victim with
his handgun.

In short, the record provided an adequate basis for the
district court to conclude that both defendants were guilty as
principals in the carjacking death of the victim.  Both defendants
participated in taking by force and intimidation a vehicle subject
to the jurisdiction of the federal government.  Both defendants
possessed "at the moment [they] demanded or took control over the
driver's automobile . . . the intent to seriously harm or kill the

-15-

driver if necessary to steal the car."  The victim's death resulted.  These are the elements that the statute requires.  <u>See</u> 18 U.S.C. § 2119(3).

### 3.  A Knowing and Voluntary Plea

Rule 11 requires that the district court ensure that a defendant's guilty plea is knowing and voluntary.  The due process clause requires the same.  <u>See</u>, <u>e.g.</u>, <u>Delgado-Hernández</u>, 420 F.3d at 19.  "[B]ecause a guilty plea is an admission of all of the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."  <u>McCarthy</u> v. <u>United States</u>, 394 U.S. 459, 466 (1969).  Accordingly, Rule 11 explicitly requires that the district court "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading."  Fed. R. Crim. P. 11(b)(1)(G).  The district court's obligation "includes ensuring that the defendant understands the elements of the charges that the prosecution would have to prove at trial."  <u>United States</u> v. <u>Gandia-Maysonet</u>, 227 F.3d 1, 3 (1st Cir. 2000).  Both defendants contend that the district court failed to adhere to this requirement in its explanation of § 2119's intent element.  Matos-Quiñones also asserts error in the district court's failure to define what it means to be an aider and abettor.

The district court did not explain the intent element of

-16-

the § 2119 charge as it was defined in Holloway.  Rather, the court

essentially read the indictment to the defendants, stating:

> To be found guilty of this offense if a trial
> were to be held, the Government had to -- must
> prove beyond a reasonable doubt that you
> unlawfully, and aiding and abetting each
> other, with intent to cause death and serious
> bodily injury, did take this motor vehicle
> that has been identified in Count One of the
> indictment that had been transported, shipped,
> or received in interstate or foreign commerce,
> from [the victim], by force and violence, and
> inflicted serious bodily injury on him, that
> is, shooting and killing [the victim].

Even if this explanation of the intent element constituted error

(an issue we do not decide),[9] the defendants cannot satisfy the

third prong of the plain error test.  As we stated above, to do so

they must demonstrate a "reasonable probability" that they would

not have pleaded guilty if the district court had explained the

charges correctly.  To this end, the defendants claim that they may

not have pleaded guilty if they had known that they could have

defended themselves at trial on the theory that they had no intent

to harm or kill the victim before they realized, some minutes after

"the moment" they took the car, that the victim worked for the

---

[9]  But we do add two details.  The district court should not
have said that the statute required proof that the defendants had
an intent to cause death and serious bodily harm.  As we have
explained, the statute requires an intent to cause death or serious
bodily harm.  Also, Matos-Quiñones's argument about the district
court's failure to explain aiding and abetting liability is
unpersuasive.  As we explained above, Matos-Quiñones was liable as
-- and pled guilty as -- a principal.  There was no need for the
district court to explain a superfluous legal concept at the plea
colloquy.

Navy. Specifically, Matos-Quiñones says (and Ortiz-Feliciano joins this argument): "had he fully understood that a jury would need to find beyond a reasonable doubt that he intended to kill or at least seriously injure the driver at the moment of seizing the vehicles, there is a reasonable likelihood, based on this record, that he would not have pled guilty."

We find this argument implausible on two grounds, even though we assume the validity of its premise about the relevant law. First, as we have already explained, there was abundant evidence that the defendants were willing to cause death or, in Matos-Quiñones's case, serious harm to the victim at the moment they demanded control over the car. Given this evidence against them, the defendants could not possibly have thought that the theory they now propose could have resulted in their acquittal. Second, despite the brutality of their crime against the victim, the defendants had obtained a plea agreement that precluded a death sentence. (Both defendants had been declared "death eligible," and had each been appointed two attorneys qualified to represent defendants in capital cases.) The defendants would have faced the possibility of a death sentence if they had chosen to go to trial. Of course, the defendants were entitled to risk a trial against long odds. They were also entitled to risk that a jury would not impose a death sentence. But there is nothing in the record to suggest that they would have been willing to take those risks if

the district court had explained the charge differently. Certainly, the defendants have not shown "a reasonable probability that, but for the [alleged] error, [they] would not have entered" their pleas.  Dominguez Benitez, 542 U.S. at 76.

## B.  Defendant Matos-Quiñones's Sentence

At his sentencing hearing, defendant Matos-Quiñones objected to the government's argument that he should be assessed a full share of responsibility for the victim's death.  Although the plea agreement allowed the government to make any sentencing recommendation, Matos-Quiñones argued that the government's argument was inconsistent with the government's stipulation that Matos-Quiñones "was not the shooter of the victim and did not at any time intend that the victim be killed."  The government countered that even after the plea agreement incorporating the stipulation, it retained the right to argue that Matos-Quiñones was fully culpable for his participation in the carjacking.  The district court reasoned that there was nothing in the plea agreement and stipulation that required the government to surrender its contention that Matos-Quiñones was fully liable for the victim's death.

"[W]e hold prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance," United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002) (internal quotation marks omitted).  Therefore, a defendant is entitled not

-19-

only to the government's "technical compliance" with its stipulations but also to the "benefit of the bargain" struck in the plea deal, United States v. Clark, 55 F.3d 9, 11 (1st Cir. 1995), and to the good faith of the prosecutor, United States v. Frazier, 340 F.3d 5, 11 (1st Cir. 2003). With these principles in mind, we have reviewed carefully the plea agreement and the transcripts of the change of plea and sentencing hearings. Finding no inconsistency between the government's stipulation and its sentencing argument, we conclude that the government's conduct at the sentencing afforded Matos-Quiñones the "benefit of the bargain" he had negotiated before pleading guilty.

By stipulating as it did, the government waived any right to refer to evidence that Matos-Quiñones had attempted to kill the victim and intended his death. Conversely, the stipulation allowed Matos-Quiñones to make an impassioned argument to the district court that he was not equally responsible for the victim's death. Although this argument would have been available in any event, it was far more effective than it otherwise would have been because of the stipulation. As the transcript shows, the argument won the serious attention of the district court.

On the other hand, the plea agreement incorporating the stipulation did not require the government to concede that Matos-Quiñones was less than fully liable for the crime to which he had pleaded guilty. First, the district court was correct in observing

-20-

that nothing in the stipulation precluded Matos-Quiñones's full liability for the charged crime. Second, the government's agreement with Matos-Quiñones, like its agreement with Ortiz-Feliciano, stipulated a guideline sentence level of 40 and prohibited the defendant from arguing for a downward departure. The guidelines specifically authorize a departure in cases where one defendant sentenced under the murder guidelines is less culpable than his co-defendants. See U.S.S.G. § 2A1.1, application note 1 (providing for a downward departure of as much as ten levels when a defendant punishable under the first-degree murder guideline is less than fully-culpable for the victim's death); U.S.S.G. § 2B3.1(c) (referencing § 2A1.1 for certain carjacking offenses). That the agreement forbade Matos-Quiñones from arguing for a downward departure on this ground emphasizes that the government had not surrendered its right to argue that Matos-Quiñones could be sentenced on the same terms as Ortiz-Feliciano.

In short, the stipulation allowed Matos-Quiñones to make a more plausible argument that he should not be sentenced to the same term as Ortiz-Feliciano. However, the plea agreement incorporating the stipulation did not require the government to concede this point, or to forego an argument to the contrary. The fact that the stipulation did not help Matos-Quiñones avoid a life sentence does not mean that the government delivered less than it

had promised.

**<u>Affirmed.</u>**