# United States Court of Appeals
## For the First Circuit

Nos. 21-1892
     21-1893

UNITED STATES OF AMERICA,

Appellee,

v.

ÁNGEL LUIS CRUZ-AGOSTO, a/k/a Bebo Sambo, t/n Angel Luis
Cruz-Agosto,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

Leticia Casalduc-Rabell for appellant.
Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

May 14, 2024

**MONTECALVO, <u>Circuit Judge</u>.** Ángel Cruz-Agosto was convicted as a felon in possession of a firearm in violation of 18 U.S.C. §§ 2, 922(g)(1), and 924(a)(2) following the entry of a guilty plea pursuant to a plea agreement. Cruz-Agosto now appeals his sentences in relation to this conviction and the revocation sentence he received for committing these crimes while serving a term of federal supervised release. Cruz-Agosto focuses his appeal on an alleged breach of the plea agreement by the prosecutor at sentencing. For the reasons that follow, we affirm the sentences given by the district court.

## I. Background[1]

On January 8, 2020, Puerto Rico Police Department agents in an unmarked vehicle pulled up to a stopped SUV to check on the occupants. Cruz-Agosto was seated in the driver's seat when the agents approached; a woman, the passenger in the car, was also standing by the open passenger door. While talking to the passengers, one of the agents observed Cruz-Agosto pull a tan-colored pistol from his waistband area and drop it on the floor behind the front-passenger seat. The agents then ordered both individuals away from the vehicle; the agents searched the car and

---

[1] Because this appeal follows a guilty plea, "we glean the following relevant facts from the plea agreement, the undisputed sections of the presentence investigation report, and the transcripts of the change-of-plea and sentencing hearings." <u>United States</u> v. <u>Spinks</u>, 63 F.4th 95, 97 (1st Cir. 2023) (cleaned up).

seized a 9mm Glock pistol and a silver Raven Arms pistol, as well as forty rounds of 9mm caliber ammunition. The Glock pistol had been modified to shoot more than one round of ammunition from a single pull of the trigger. Neither occupant had a firearms license. The agents arrested Cruz-Agosto, and a grand jury charged him with a one-count indictment. He was on federal supervised release at the time of the arrest.[2]

In May 2021, Cruz-Agosto entered into a plea agreement with the government. The plea agreement calculated a Total Offense Level ("TOL") of nineteen. Although the plea agreement did not calculate Cruz-Agosto's Criminal History Category ("CHC"), the parties agreed to jointly recommend a sentence of thirty-seven months' imprisonment irrespective of the CHC. The parties anticipated that Cruz-Agosto may have a higher CHC than I. The parties also agreed that Cruz-Agosto "may argue for a concurrent sentence in the revocation of supervised release . . . while the [g]overnment reserve[d] the right to argue for a consecutive sentence of [four] months of imprisonment."

On June 4, 2021, at a change-of-plea hearing, Cruz-Agosto, pursuant to the plea agreement, pled guilty to the

_____

[2] Cruz-Agosto had previously pled guilty to one count of conspiracy to possess with intent to distribute controlled substances within a protected location and had been sentenced to eighty-seven months' imprisonment followed by six years of supervised release, which he had been serving at the time of arrest.

one-count indictment as a felon who knowingly and unlawfully possessed two firearms in violation of 18 U.S.C. §§ 2, 922(g)(1), and 924(a)(2). A Presentence Investigation Report ("PSR") was subsequently prepared by the probation office. Like the parties, the PSR calculated the TOL as nineteen. However, the PSR calculated a CHC of V, due to the applicable criminal history score of eleven. Accordingly, the guidelines sentencing range ("GSR") under the United States Sentencing Guidelines was fifty-seven to seventy-one months' imprisonment.

The district court subsequently held sentencing hearings both on Cruz-Agosto's new conviction and on the revocation of his supervised release. At sentencing on the new conviction, Cruz-Agosto's counsel reiterated that the parties were jointly recommending thirty-seven months' imprisonment. In support of the parties' request for a below-guidelines sentence, Cruz-Agosto's counsel urged the court to consider his strong familial relationships and "the overrepresentation" of Cruz-Agosto's criminal history. The district court asked the government if it had anything to add, and the government responded, "just that we are standing by the plea agreement and recommendation of [thirty-seven] months."

The district court agreed with the calculations in the PSR as to the TOL and CHC. Like the PSR, based on the TOL and CHC, the district court calculated the GSR as fifty-seven to

seventy-one months' imprisonment. The district court found, however, that "the sentence recommended by the parties does not reflect the seriousness of the offense, does not promote respect for the law, does not protect the public from further crimes by Mr. Cruz[,] and does not address the issues of deterrence and punishment." Accordingly, the district court sentenced Cruz-Agosto to a within-guidelines sentence of seventy-one months' imprisonment, followed by a three-year term of supervised release.[3]

Immediately following that hearing, the district court held a sentencing hearing for the revocation of Cruz-Agosto's supervised release. Cruz-Agosto requested a revocation sentence of twelve months' imprisonment to run concurrently with his other sentence. When it came time for the government to make its recommendation, it stated in full:

> Your Honor, when [the government] and [Cruz-Agosto] negotiated this agreement, it contemplated that the government would ask for a consecutive four months on top of the sentence rendered by the [c]ourt on the new case. Now that the [c]ourt has sentenced above that recommendation, I don't necessarily feel comfortable, given the agreement, asking that the revocation be consecutive.
>
> So I will simply leave this in the [c]ourt's discretion, unless the [c]ourt wants a more specific position from the government. I don't want to run afoul of the intent of the

---

[3] Cruz-Agosto objected to the new sentence "based on procedural and substantive unreasonableness." However, he does not pursue these objections on appeal.

agreement, which I see as binding on the government, Your Honor.

The district court responded that it "[did]n't think [Cruz-Agosto] w[ould] complain about [the government] requesting a concurrent sentence." The government did not reply to the court's remark nor make any further recommendation as to the revocation sentence.

The district court revoked Cruz-Agosto's supervised release after finding that Cruz-Agosto had violated the conditions of his supervised release by committing new crimes. The district court calculated the applicable guidelines range for the revocation sentence to be twelve to eighteen months' imprisonment. Accordingly, the district court sentenced Cruz-Agosto to a within-guidelines sentence of eighteen months' imprisonment to be served consecutively to the other sentence imposed.[4]

Cruz-Agosto filed timely notices of appeal as to both sentences.

## II. Discussion

On appeal, Cruz-Agosto argues that the government breached its obligation under the plea agreement by not making further statements in support of the recommended sentence, by not arguing for a concurrent sentence or a maximum of a four-month consecutive sentence on the revocation, and by failing to correct

---

[4] At the sentencing hearing, Cruz-Agosto objected to the length of the revocation sentence. However, he does not pursue this objection on appeal.

a perceived error made by the district court. For the reasons that follow, we reject each of these arguments.

## A. Standard of Review

Because Cruz-Agosto did not object below to the purported breaches of the plea agreement, the parties agree that our review on appeal is for plain error. See United States v. Lessard, 35 F.4th 37, 42 (1st Cir. 2022); United States v. Saxena, 229 F.3d 1, 5 (1st Cir. 2000). Plain error requires a defendant to show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Lessard, 35 F.4th at 42 (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)). "[A]n error is deemed to affect substantial rights when it likely affected the outcome of the proceedings." United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014).

## B. Breach of Plea Agreement

"When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Lessard, 35 F.4th at 42 (cleaned up) (quoting Santobello v. New York, 404 U.S. 257, 262 (1971)). "Because plea bargaining requires defendants to waive fundamental constitutional rights, we hold prosecutors engaging in plea bargaining to the

most meticulous standards of both promise and performance."  Id.
(quoting United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995)).
Thus, "[a] defendant is entitled to the benefit of the bargain
struck in the plea deal and to the good faith of the prosecutor."
Id. (cleaned up) (quoting United States v. Matos-Quiñones, 456
F.3d 14, 24 (1st Cir. 2006)).

In our review, we consider the totality of the
circumstances.  Id.  "The critical question is whether the
prosecutor's 'overall conduct is reasonably consistent with making
the promised recommendation, rather than the reverse.'"  Id.
(cleaned up) (quoting United States v. Canada, 960 F.2d 263, 269
(1st Cir. 1992)).  We address each of Cruz-Agosto's arguments
alleging breach in turn.

### 1. "Lip Service" as to the Recommended Sentence on the New Offense

Cruz-Agosto first alleges that the government breached
the plea agreement by merely making a "scant, neutral statement"
at the sentencing for Cruz-Agosto's new offense, "rather than
affirmatively recommending," the agreed-upon downwardly variant
sentence.  In particular, Cruz-Agosto argues that the government
-- to satisfy its obligations under the plea agreement -- is
required to justify its recommendation for a significant downward
variance from the GSR.  In doing so, Cruz-Agosto relies heavily on

- 8 -

our decision in United States v. Rivera-Ruiz, 43 F.4th 172 (1st Cir. 2022).

We require prosecutors to pay "more than lip service to, or technical compliance with, the terms of a plea agreement." Lessard, 35 F.4th at 42 (quoting Almonte-Nuñez, 771 F.3d at 89). However, "prosecutors need [not] adhere to any particular form of words in 'recommending' an agreed sentence, but their overall conduct must be reasonably consistent with making such a recommendation." Canada, 960 F.2d at 269. Further, "a prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm." Id. at 270.

Here, the government affirmatively stated at sentencing, "we are standing by the plea agreement and recommendation of [thirty-seven] months." This was clearly an affirmative recommendation to the sentencing court, even if it was "simple and straightforward." United States v. Montañez-Quiñones, 911 F.3d 59, 65 (1st Cir. 2018). Cruz-Agosto does not argue that the government had an affirmative duty to present any other information under the plea agreement, and he does not suggest that the government "conspicuously undermin[ed] its agreed position." Canada, 960 F.2d at 270. Indeed, "the government at no point suggested -- or even insinuated -- that the circumstances called for a different sentence than the one it had agreed to recommend." Saxena, 229 F.3d at 8. Put another way, "the government did not

- 9 -

fail to argue something that it explicitly promised to, nor did the government explicitly argue anything prohibited by the plea agreement." United States v. Frazier, 340 F.3d 5, 12 (1st Cir. 2003).

Further, Cruz-Agosto's comparison of this case to Rivera-Ruiz is unavailing. 43 F.4th 172. In Rivera-Ruiz, we held that the government did not breach the plea agreement when it proffered "additional facts outside the plea agreement" in arguing for a sentence at the high end of the GSR. Id. at 178, 180. In comparing Rivera-Ruiz to the case at hand, Cruz-Agosto argues that where the government agrees to jointly recommend a downwardly variant sentence, the government must explicitly describe the facts that support that downward variance. This argument fails on several points, and we cannot discern any error here.

First, we note that we have never imposed an obligation on the government to further explain its recommendation for a downwardly variant sentence when such an obligation is not explicit in the plea agreement. See United States v. Gall, 829 F.3d 64, 73 (1st Cir. 2016) (finding no plain error where government recommended the sentence outlined in the plea agreement but did not offer additional facts to support that downwardly variant sentence and instead stated that the PSR's guidelines calculation was "correct," even where the PSR calculations were higher than those in the plea agreement). Generally, there is "no affirmative

- 10 -

obligation of either advocacy or explication on the prosecutor" when the plea agreement itself does not impose such a duty. Lessard, 35 F.4th at 44. The plea agreement here did not require the government to do more than "jointly recommend a sentence of [thirty-seven] months of imprisonment," which the government expressly did.

Second, Cruz-Agosto fails to distinguish between what the government is obliged to do under the plea agreement and what the government is permitted to do under the agreement. For example, in Rivera-Ruiz, we noted that "[t]he plea agreement did not expressly or implicitly preclude the government from proffering additional relevant information to support its recommendation." 43 F.4th at 180. Ultimately, when the government's introduction of additional relevant information does not "violate the spirit of the plea agreement through an 'end-run around' its assurances," we have consistently found such a proffer to be permissible, even where not obligatory. Id.; see, e.g., United States v. Rivera-Rodríguez, 489 F.3d 48, 58 (1st Cir. 2007) (holding that "the government was free to offer reasons in support of [its] recommendation" under the plea agreement). But here, while the government generally was permitted to reiterate some of the relevant facts at sentencing, it was not obligated to do so. The government's only obligation at sentencing, under the plea

- 11 -

agreement, was "to jointly recommend a sentence of [thirty-seven] months of imprisonment."

Lastly, Cruz-Agosto argues that the government breached its duty to provide the sentencing court with relevant information. See United States v. Reyes-Santiago, 804 F.3d 453, 474 (1st Cir. 2015) (discussing the government's "obligation to furnish relevant information" (quoting Saxena, 229 F.3d at 6)). At the sentencing hearing and in his sentencing memorandum, Cruz-Agosto extensively discussed the factors he believed justified a downward variance, such as his relationship with his family, his prior work experience, and the potential overrepresentation of his criminal history in his CHC calculation. He now suggests on appeal that the government was required to present this same information to the sentencing court. Given the terms of the plea agreement, we are not persuaded that the government had an obligation to repeat these mitigating factors when Cruz-Agosto himself had already provided the sentencing court with this relevant sentencing information. Further, Cruz-Agosto does not suggest that the government undermined these mitigating facts in any way.

For these reasons, we discern no error -- plain or otherwise -- in the prosecutor's actions at the sentencing hearing as to the new offense. The prosecutor's overall conduct was consistent with making the promised recommendation of thirty-seven months' imprisonment.

## 2. Failure to Recommend a Concurrent or a Maximum of a Four-Month Consecutive Sentence on Revocation

Next, Cruz-Agosto argues that the prosecutor was required to argue for a revocation sentence of no more than a consecutive four-months' imprisonment. In the same vein, Cruz-Agosto argues that he had "bargained with the [g]overnment in order to obtain a total incarceration period no longer tha[n] [forty-one] months," and, thus, "in th[e] spirit" of the agreement, the government was required to "request any length of revocation sentence to run <u>concurrently</u> with the [seventy-one] months." We find that this argument fails on the third prong of plain error: prejudice.

To reiterate the relevant facts, as part of the plea agreement, the parties agreed that the government could "argue for a consecutive sentence of [four] months of imprisonment" at the revocation sentencing. At the revocation sentencing hearing, the prosecutor referenced that the government had reserved the right to argue for a consecutive four-month revocation sentence but stated that, in light of the court's seventy-one-month sentence for the new offense, the prosecutor did not "feel comfortable . . . asking that the revocation be consecutive" based on the government's plea obligations. Cruz-Agosto now contends that the government breached the plea agreement by not explicitly making a

concurrent sentencing recommendation and, instead, leaving the revocation sentence to the court's discretion.

We have reiterated that, under our plain error standard, "an appellant's substantial rights are deemed to be affected only when an error 'likely affected the outcome of the proceedings.'" Montañez-Quiñones, 911 F.3d at 64 (quoting Almonte-Nuñez, 771 F.3d at 89). Here, "[t]here is nothing in the record to suggest that the district court would in fact have imposed the recommended sentence had the government affirmatively made the recommendation" requested by Cruz-Agosto. United States v. Sierra-Jiménez, 93 F.4th 565, 570 (1st Cir. 2024). The record makes clear that the district court considered the government to be recommending a concurrent sentence, to the benefit of Cruz-Agosto. Specifically, the court stated that it did not "think [Cruz-Agosto] w[ould] complain about [the government] requesting a concurrent sentence." The district court then simply rejected a concurrent sentence.

Cruz-Agosto has not offered any basis for his argument that, had the government expressly asked for a concurrent sentence, the district court would have sentenced him differently. We are further unpersuaded that the district court would have imposed a lesser consecutive sentence if the government made an explicit request for the same. For this reason, Cruz-Agosto has not met his burden of establishing that any claimed error "affected [his]

substantial rights," and Cruz-Agosto has not met the plain error standard.  <u>Sierra-Jiménez</u>, 93 F.4th at 570-71.

### 3. Failure to Bring Error to Court's Attention

Lastly, Cruz-Agosto insists that the court erred in its understanding of the PSR's recommendation on the revocation sentence, and the government subsequently breached the plea agreement by failing to "bring[] that error to the court's attention."[5]  This argument fails on the second prong of plain error: that any alleged error was clear or obvious.

In particular, Cruz-Agosto points to the sentencing court's statement that "the [c]ourt agrees with the probation officer and concludes that a sentence at the high end of the guideline range is a sentence sufficient, but not greater than necessary, to comply with . . . Title 18, United States Code, Section 3553(a)."  Cruz-Agosto understands this statement to mean that the sentencing court mistakenly believed that the probation officer had recommended a sentence at the higher end of the GSR. Thus, Cruz-Agosto argues that the government had to correct this misunderstanding "to meticulously adhere to the spirit of the plea agreement."

---

[5] Notably, Cruz-Agosto does not base this appeal on any alleged mistake by the district court, but instead focuses on the government's breach of its duties.

However, the sentencing court's statement is open to another interpretation: that the court was agreeing with the representations and guidelines stated in the PSR, which allowed the court to independently conclude that a sentence at the high end of the GSR was appropriate. Given this equally plausible reading of the record, we cannot find that any error (if one exists) was clear or obvious such that the government was required to affirmatively correct the district court. This is particularly true where Cruz-Agosto also did not object to the court's supposed misunderstanding. For this reason, Cruz-Agosto's final argument also fails.

## III. Conclusion

For the foregoing reasons, we affirm the sentences imposed by the district court.